BOSTON AND WORCESTER RAILROAD CORPORATION *vs.* WESTERN RAILROAD CORPORATION.

WESTERN RAILROAD CORPORATION *vs.* BOSTON AND WORCESTER RAILROAD CORPORATION.

An award under *Sts.* 1845, *c.* 191 and 1857, *c.* 291, of commissioners appointed to determine the terms upon which connecting railroad corporations shall transport each other's passengers and freight, and perform the business of each other, must be returned into court.

It is no objection to an award of commissioners under *Sts.* 1845, *c.* 191 and 1857, *c.* 291, establishing the compensation to be paid by each of two railroad corporations to the other for drawing passengers and freight over its railroad, that the award gives to either corporation different amounts for carrying passengers and freight from the same station upon its road to the junction, where they are to be carried to different stations upon the other road.

Commissioners appointed to determine the terms upon which connecting railroad corporations shall transport the passengers and freight and perform the business of each other cannot, under *Sts.* 1845, *c.* 191 and 1857, *c.* 291, include in their award any time before the filing of the petition for their appointment.

PETITIONS filed in Suffolk, in June 1857, under *Sts.* 1845, *c.* 191, and 1857, *c.* 291, by the Boston and Worcester Railroad Corporation, whose road extended from Boston to Worcester, and the Western Railroad Corporation, whose road extended from Worcester to Albany, N. Y., for the appointment of commis-

sioners to determine and fix the rate of compensation to be paid by each for drawing its passengers, merchandise and cars over the railroad of the other, and for providing suitable depot accommodations for the same.

Each petition alleged that the petitioners owned a railroad in use, and were by law required at reasonable times, and for a easonable compensation, to draw over their road, and to provide suitable accommodations for, the passengers, merchandise and cars of the respondents, who had been authorized by the legislature to enter with their railroad upon, unite the same with, and use the road of the petitioners; and that the parties were unable to agree upon the compensation to be paid by the petitioners to the respondents. To each petition an answer was filed. The Boston and Worcester Railroad Corporation in their answer, and also in their petition, prayed that the commissioners might also determine " all other questions between the said corporations in relation to the transportation of freight and passengers over, and other business upon or connected with said roads, in which said corporations are or may be jointly interested, upon which they cannot agree ; and the manner in which said business shall be done ; and apportion to said corporations respectively their just share of the cost and expenses of doing said business, and of the receipts or income from the same." To this part of their petition the Western Railroad Corporation demurred.

On each petition the court passed an order appointing, by agreement of parties, the same commissioners " to hear and determine all questions at issue between said parties, which are set forth in said petition, and which commissioners appointed under the acts aforesaid are authorized, by force of the provisions thereof, to hear and determine according to the true intent and meaning thereof."

The commissioners returned their award into this court at March term 1858, by which they determined that each corporation should transport passengers and freight to and from the railroad of the other at the rates of fare stated in the tables annexed to their award, according to which either corporation

would receive different amounts for carrying passengers or freight from the same station upon its road to the point of connection between the two roads, if such passengers or freight were to be carried to different stations upon the road of the other. For instance, by the tables, for each first class passenger from Boston to Albany the Boston and Worcester Railroad Corporation would receive $1 and the Western Railroad Corporation $4; for such a passenger from Boston to the State line the Boston and Worcester Railroad would receive $0.90, and the Western Railroad $3.45; from Boston to Springfield the Boston and Worcester Railroad $1.15 and the Western Railroad $1.60; and the division of the fare from Boston to other stations upon the Western Railroad, and from each station upon each road to each station upon the other varied in like manner. The award provided that if any of these rates should be raised or lowered, they should be raised or lowered to both corporations in the same ratio.

The commissioners also, in accordance with an agreement of the parties, awarded that the Western Railroad Corporation should furnish and repair the cars necessary and proper for all such transportation, and should receive as compensation therefor, from the Boston and Worcester Railroad Corporation, certain rates per mile for every passenger and every ton of freight transported by the latter to or from the Western Railroad; and that each corporation should be liable for injuries and losses to passengers, luggage, freight and cars while upon its road.

The commissioners concluded by saying that they had made their award upon the understanding that their determination would relate back to the first of June 1856, at which time a former contract between the two corporations expired; but added that "this principle having been controverted by one of the respondents, the undersigned have considered and do award and determine, that the same rates ought to be paid, and that the same provisions ought to be observed, without reference to the time or date, for or from which the petitioners ought legally to commence to pay such rates and to observe such provisions."

The Boston and Worcester Railroad Corporation moved that

the award be accepted; and the Western Railroad Corporation filed the following objections to it:

" 1st. That said award of said commissioners transcends in some, and falls short in other respects, in the execution of the authority confided to them by said orders and the statutes of the Commonwealth in that behalf in this, viz.: That it does not, nor does it assume to, fix a reasonable compensation, to be paid to either of said roads, for drawing over their respective roads the passengers, merchandise and cars of the other, and for providing suitable depot accommodations for such passengers and merchandise as shall be drawn over their respective roads, the one for the other, in manner as aforesaid, and for the receipt and delivery of the same, as set forth in the statutes in that behalf made and provided; but have assumed to award and determine that certain fixed fares or tolls, unchangeable except by the joint consent of the parties, shall exist, and that an apportionment shall be made of the receipts and profits of all business that shall pass from the one to the other road; which apportionment is founded, not upon the number of miles of transportation service performed by either for the other, nor of cost of depot accommodations, nor of delivery of freight and passengers, but upon the view of the commissioners of what would be a fair division of profits between the said roads, and varying in amount at each station of said roads, without reference to the distance traversed or service performed by either for the other.

" 2d. That said commissioners have transcended the orders of this court, and the statutes of the Commonwealth, in this, that they have determined by their said award that the same shall relate back to a period antecedent to the filing of the petitions of said roads, or either of them, and embrace the business of said roads from the first day of June 1856, when certain agreements between said roads expired.

" 3d. That said commissioners have transcended the orders of this court and the statutes of the Commonwealth in other respects."

At the hearing in this court, one of the counsel for the Western Railroad Corporation testified that, at the time the order

appointing the commissioners was made by the court, it was objected by them that it was not in the power of the legislature to compel the parties to do a joint business, and thus apply to the Western Railroad Corporation that part of the statute which relates to joint business; and that the order was so modified as to give the commissioners power to do what they could lawfully do according to the true intent and meaning of the act; that at the hearing before the commissioners it was again insisted that joint business could only be under agreement, and that the statute could not be applied to compel the Western Railroad Corporation to do a joint business of any kind, that a fixed price was to be determined by the commissioners, as the parties had failed to agree upon any, and that, in fixing such price, the *St.* of 1857, *c.* 291, which involves a division of joint receipts, was to be rejected.

To the introduction of all this evidence the Boston and Worcester Railroad Corporation objected ; and their objection was reserved, and the case reported to the full court.

*B. F. Thomas & G. S. Hale,* for the Boston and Worcester Railroad Corporation, cited *Charles River Mills* v. *Mills on Mill Creek,* 9 Pick. 207 ; *Eastern Union Railway* v. *Eastern Counties Railway,* 2 El. & Bl. 530 ; *Newry & Enniskillen Railway* v. *Ulster Railway,* 39 Eng. Law & Eq. 553 ; *Coomes* v. *Burt,* 22 Pick. 422 ; *Boston Water Power Co.* v. *Gray,* 6 Met. 169, 170 ; *Vermont & Massachusetts Railroad* v. *Fitchburg Railroad,* 9 ·Cush. 369 ; *Sts.* 1830, *c.* 81 ; 1833, *c.* 116, § 1 ; *Fitchburg Railroad* v. *Gage,* 12 Gray,

*S. Bartlett & A. Phelps, Jr.* for the Western Railroad Corporation, cited *Newburyport Turnpike* v. *Eastern Railroad,* 23 Pick. 326 ; *Roxbury* v. *Boston & Providence Railroad,* 6 Cush. 432 ; *Boston & Lowell Railroad* v. *Salem & Lowell Railroad,* 2 Gray, 35 ; *Worcester* v. *Western Railroad,* 4 Met. 564 ; Declaration of Rights, art. 10.

MERRICK, J.* [After stating the substance of the petitions and order, the return of the award, and the motions made by each

---

* HOAR, J. did not sit in this case.

22 *

party.]   There is no doubt that this is a very proper course of
proceeding for the purpose of obtaining a conclusive determina-
tion of the questions in controversy between the parties as to
the validity of the award; for, although the statutes contain
no express provisions concerning its publication, or requiring
the commissioners to make any return of their doings into the
court from which their commission issued, it necessarily be
comes their duty to do so, in order that it may be known
whether they have exercised the authority conferred upon them
and acted therein in conformity to the requirements of law
They are constituted a board for the performance of certain ser-
vices under the statutes; but as they derive all their right and
power to act in the premises at all from their judicial appoint-
ment, the court by which it is made will so far supervise and
control their proceedings, as to see that, in discharge of the du-
ties thus imposed upon them, they have acted within the scope,
and have neither exceeded nor failed to exercise the full measure
of authority with which they are invested.   In considering their
return, if it be found that they have thus acted, their doings and
decisions will not be interfered with.   The court will not ex-
amine any question upon which they, within the limits of their
legitimate authority, have passed, nor reverse or disturb any
award which they have made consequent to their determination
of it.   But on the contrary their award should in such case be
approved and affirmed.

The Western Railroad Corporation object to the award made.
by the commissioners in the matters in issue between the two
corporations, for the alleged reason that in making it they have
in some respects exceeded, and in others fallen short of execut-
ing the authority confided to them by the orders of the court
and the statutes of the Commonwealth in that behalf.

In support of the first of these objections it has been asserted
and argued, that in making their award the commissioners have
not assumed to fix a reasonable compensation for drawing over
the respective roads of the two corporations the passengers, mer-
chandise and cars of the other, and for providing suitable depot
accommodations therefor, and for the receipt and delivery of the

same; and in support of the second, that the commissioners have proceeded upon the ground that they were authorized by the statutes to treat all passengers or freight passing over the whole or a portion of both roads as partnership business, and in relation to all this they have substantially awarded, that the two corporations are to be regarded as corporations doing a join business, and subject, under the law, to any arbitrary division of the entire income therefrom which the commissioners might think fit to order.

But neither of these objections can be sustained, because the propositions asserted in them do not appear to have any foundation in the facts of the case. It is in the first place to be considered that it is perfectly apparent, upon inspection of the tabular statements appended to and made part of their award, that the commissioners have fixed and determined with the utmost exactness the precise compensation which each corporation shall in every particular instance receive for the carriage over its own road of the freight and passengers of the other. This is not, and of course could not, in view of the plainest of all possible statements to that effect, be denied by the Western Railroad Corporation; but they insist that the rates of compensation thus prescribed are shown by the same tabular statements not to have been predicated, fixed and established by the commissioners upon the basis of a reasonable compensation, because it appears therefrom, that instead of a single fixed price, many different prices are to be paid for the performance of the same service, in the transportation between the same stations, of a passenger or of a given quantity of freight of the same class. But such a conclusion is a mere assumption, not at all warranted by the facts from which it is deduced.

The reasons which prevailed with the commissioners, and nduced them to fix upon the several sums to be paid as a reasonable compensation for the services to be performed, are not reported by them, nor disclosed to the court by any evidence before it. It is sufficient that they were satisfactory to those upon whom the duty and responsibility of a decision of the question were specially devolved. But it is obvious that they may have

been of the most forcible and convincing character. What is, or what is to be called a reasonable compensation — or, in other words, what sum it is reasonable that a railroad company should charge and receive in compensation for the service rendered by it in the transportation of a passenger or of a given quantity of merchandise over the whole or a part of its road — is certainly not a simple, abstract question; for its solution depends upon a great variety of considerations. There would be no difficulty, for instance, in determining what would be a just and adequate recompense to a laborer for a single day's work, in a community where there existed a general usage as to the rate of compensation for such service, which was well known to the contracting parties. But in case of the transportation of persons or chattels over the road of a railroad company, the question of compensation is affected by a vast number of circumstances, and necessarily becomes complicated by the great variety of considerations which bear upon it. Here, among other things, are to be taken into view the capital invested; the probable amount of the whole business which will be done by the company; the necessary and constant expenses to be incurred in the operation of the road and the conduct of their affairs; the unavoidable waste and decay of the track and of the rolling stock, and the consequent expenditures for repairs and renewal; the difference, if it exists, in the ease and facility with which transportation may be effected in different parts of the road, on account of higher or lower grades, or other causes of obstruction; and also the accommodations to be afforded to the public, and the rights to be enjoyed by it; as well as the number and the employment of the population in the surrounding territory, from which business may be attracted or secured to the road, and the competition which is to be met and overcome in order to reach and secure it. It would without doubt be reasonable that the proprietors of a railroad, which had been judiciously located and prudently constructed and afterwards properly managed, should annually receive an aggregate sum for all the services of every kind performed by them, at least equal to legal interest upon the amount of their investment, after payment of all current ex-

penses and charges necessarily incurred in preserving their road and its appendages from waste and depreciation. It is easy to state, and to see the justice and equity of this general proposition. But how the details of the entire business are to be managed, to produce this result, is a very different thing. To frame a tariff establishing rates of compensation in advance of the work to be done, which will operate with substantial equity in all instances, so that the aggregate sum to be realized from the whole business shall be contributed by the various persons in whose behalf the service is rendered, in a fair proportion to the benefits received, requires an extensive knowledge of facts and the exercise of a careful and discriminating judgment. This cannot be accomplished by adopting a rule which would make a single and uniform price for the transportation of each class of passengers, or of freight, over equal distances on every part of the road; but the price will unavoidably be affected by many considerations, such for instance as the course and usages of trade, the pressure of competition with other carriers, and the character and grade of the portion of the road to be passed over. These difficulties will obviously be increased when goods or persons are to be transported over two roads joined and united with each other, but belonging to distinct and independent proprietors. The fact therefore, which is relied on by the Western Railroad Corporation to sustain their objection, that the award made by the commissioners will compel one party to pay to the other many different prices for the performance of the same service in the transportation of a passenger or of a given weight of freight, of the same class, between the same stations, has no tendencv to show that they did not consider and determine that the price fixed by them to be paid in each particular instance was a just and reasonable compensation for the service performed. They heard the parties, their allegations, proofs and arguments, and we see no reason for believing that in deciding the questions submitted to them, they did not act in conformity either to the letter or to the spirit and purpose of their commission.

We are unable to perceive anything in the facts reported

which shows that in relation to the business passing from one road to the other the commissioners regarded the two corporations as copartners, or that the proceeds of the business were regarded by them as a partnership fund, subject to an arbitrary division according to their will. It is very probable that, in ascertaining and determining what was a reasonable compensation to be paid by the one party to the other for the service to be performed, they did take into consideration the fact that there was no controversy or difference of opinion between them as to what should or ought to be the whole compensation to be paid for the transportation of a passenger or the carriage of freight over the whole or a portion of the respective roads. It was only in respect to the compensation to be respectively paid by one of the corporations for the carriage of its cars, passengers and freight over the road of the other, that they could not agree. This is perfectly apparent from the allegations and concessions of the parties in the pleadings, as well as from the tables annexed to the award of the commissioners. And it is this precise question — What shall each corporation pay to the other for the transportation of their cars, passengers and freight over the road of the latter? — which they actually decided. The tabular statements which constitute part of the award show in express terms that every payment to be made by either of the parties to the other is to be for services actually rendered. It makes no difference that the effect of such payments in reference to the aggregate sum received for the services on both roads, is the same as a division upon a specified scale of the whole earnings of both corporations for that service. It is only a consequence resulting from a system of compensation predicated upon the basis of reasonable recompense in each instance of services performed, and not at all upon the idea of a copartnership between the parties. Provisions for the payment, by one party to the other, of particular and specified sums, for every single act of work or service by them respectively done or performed, are entirely inconsistent with the idea or supposition that the parties were copartners; and could have been made and adopted only upon the ground that in respect to their sev-

eral rights and liabilities they were distinct and independent of each other.   And this is exactly according to the law.   When a passenger or freight is received or taken by one corporation at any one of its stations to be transported to some point on the line of another road with which it is united under and by force of the statutes before mentioned, this is considered the business of the first corporation throughout the whole route to the ulti-mate place of delivery.   They are accordingly to receive to their own use payment for the whole service to be performed.   But as a portion of the work is to be done by another corporation, who are compellable under the provisions of the statute to do it in their behalf, they are bound in justice, as well as under the provisions of the statute, to pay to the latter for this service a reasonable compensation.

This is what is required by the law.   And it is only when there is a disagreement between the parties upon this particular subject, that there is any occasion to provide some plan or method by which the rights of the parties may be definitely and conclusively settled.   It was accordingly the duty of the com-missioners, appointed in these cases in pursuance of the respect-ive petitions of the parties, to fix and determine by their award what would be a reasonable compensation to be paid by each corporation for drawing its cars, passengers and merchandise over the road of the other.   So the law and their duty under their commission from this court appear to have been under-stood by them; for upon this subject their award does nothing more than fix with the greatest minuteness and precision the sum which each corporation is to receive for its compensation in every particular instance of service performed for the other; and since it thus provides for payment of services to be rendered, and not for the division of profits to be earned, it cannot be ob-noxious to the objection that the commissioners, in making it, acted upon the assumption of an existing partnership between the parties.

The same conclusion will be reached in considering the pow-ers and duties of commissioners under and by virtue of the provisions, properly interpreted, of the *St.* of 1857, *c.* 291, § 2.

By that statute they were authorized, in the most comprehensive terms, upon the application of either party, to hear and determine all questions between the parties, upon which they could not agree, in relation to the transportation of freight and passengers over, and other business upon and connected with said roads, in which the two corporations were jointly interested. This expression, "jointly interested," we think, plainly does not import, in the connection in which it is used in the statute, any copartnership, or refer to business carried on by parties who, in reference to it, stand to each other in the relation of partners; but, on the contrary, was intended solely to describe service rendered in the transportation of passengers and merchandise over the whole or parts of the roads of two independent companies, acting, indeed, in concert and coöperation with each other, but each at the same time doing the work on its own road, on its own sole account, and for its own individual advantage. That this is the proper construction to put upon the language of the statute, and expresses truly the intention of the legislature in its enactment, is apparent from the consideration, that the *St.* of 1857, *c.* 291, is merely in addition to that of 1845, *c.* 191, and was obviously designed only to carry out the provisions of the latter, by conferring on two distinct and independent corporations equal and similar privileges, and by subjecting them to the same reciprocal obligations in reference to the transportation over each road of their respective freights of persons and chattels. It in no way purports to create a common interest between them, or to curtail their respective individual rights, or in any sense to unite them as copartners. It was in fact only because the two corporations are, and are intended to be, kept independent of each other, that statutory regulations, respecting business towards the accomplishment of which each must necessarily contribute a portion of the necessary service, became indispensable; for, as they could become partners, or have an effectual joint or common interest in their business, only by their mutual agreement, it is obvious that if such agreement was made, no occasion would exist for legislative interposition.

Upon this interpretation of the statute, it will be seen that

commissioners, appointed under the provisions of the *St.* of 1845, *c.* 191, have full power and authority, upon the application of either party, to hear and determine all questions between the parties in relation to the transportation of freight and passengers over, upon and connected with their respective roads. The award of the commissioners in the present cases is clearly within the scope of the authority thus conferred. Their whole decision amounts in fact to no more than this: that when one of the corporations shall require, as it lawfully may, that its own freight and passengers shall be carried and transported over the road of the other, it shall pay to the latter, as a compensation of its services, at and after the several rates stated and specified in the award. In the absence of any proof to the contrary, this must be considered as a determination of what in each instance was considered and adjudged by the commissioners to be a reasonable compensation for the service performed, since that was in substance the whole matter submitted to their decision ; and to which, as far as we can see, they confined their attention.

The award proceeds to determine other questions which were in controversy between the parties ; but all action on those subjects was in pursuance of a voluntary submission and agreement relative thereto, and no objection is now made to it on that account.

It is however further objected by the Western Railroad Corporation, that the commissioners exceeded their powers in determining that their award should relate back to the first day of June 1856, being the date of the expiration of a former contract between the parties. This objection must be sustained Their determination could only take effect from and after the time of the filing of the petition of the Western Railroad Corporation. So much, therefore, of the award as relates to the rights, duties and obligations of the parties anterior to the commencement of proceedings, by the filing of that petition, must be set aside and rejected. This in no way affects the award in any other respect ; and the order therefore must be that, with that exception, it is accepted, affirmed and established, and that judgment to this effect be entered of record.