[No. 19407. Department One. October 29, 1925.]

NORTHERN PACIFIC RAILWAY COMPANY, *Appellant*, v. THE DEPARTMENT OF PUBLIC WORKS *et al.*, *Respondents.*[1]

CARRIERS (3-2)—REGULATION—RECOVERY OF OVERCHARGES—REMEDIES—LIABILITY. Under Rem. Comp. Stat., § 10434, authorizing recovery of overcharges for services in excess of the lawful rate at the time the charges are made, or which shall thereafter be declared to be the legal rate, a carrier is not liable where its charges were in conformity with the lawful rate as fixed by the department upon a hearing and under an order that was prospective; and in such case, overcharges cannot be based upon § 10345, requiring that all charges shall be "just, fair, reasonable and sufficient;" especially in view of penalties for non-compliance with the order.

SAME (3-3)—REGULATION—OVERCHARGES—EVIDENCE. In an action to recover overcharges after the standard was fixed by the department, alleged prior practices of shippers in employing a different standard are impertinent.

Appeal from a judgment of the superior court for Thurston county, Wilson, J., entered April 13, 1925, upon affirming an order of the department of public works for reparation of overcharges by a carrier. Reversed.

*Geo. T. Reid* and *L. B. daPonte*, for appellant.

*The Attorney General* and *H. C. Brodie, Assistant* (*Wm. Phelps Totten*, of counsel), for respondents.

HOLCOMB, J.—This appeal is from a judgment affirming an order of the department of public works, directing appellant to pay to the department of public works $242.29, to be disbursed to the Roosevelt Transfer & Fuel Company, as reparation of overcharges on shipments of wood, which charges were found by the department of public works to be unjust, unreasonable and excessive. The matter was before the trial court

[1]Reported in 240 Pac. 362.

on review proceedings from the order of reparation made by the department.

The proceedings were originated by a complaint by the Roosevelt Transfer & Fuel Company, which alleged, after certain formal matters:

"(1)   On March 17, 1922, under the second supplemental order in case 5150, the above named respondent was required to cease and desist on or before July 1, 1922, and thereafter to abstain from publishing, demanding, receiving or collecting any charges for the intrastate movement of fuel wood, pulp wood and wood bolts (not exceeding approximately 16″ in length) and for hogged fuel within the state of Washington, rates based upon the measurement of 128 cubic feet to the cord, when such commodities are loaded loosely on racked, flat, or gondola cars (racks to be supplied by the shipper); and

"(2),  In this order the unit of measurement of 192 cubic feet to the cord was provided for fuel wood, pulp wood, and wood bolts (not exceeding approximately 16″ in length), and 200 cubic feet to the cord for hogged fuel; and

"(3),  The Roosevelt Transfer & Fuel Company received shipments of fuel wood (not exceeding approximately 16″ in length) at Seattle from the Northern Pacific Railway Company during the period of July 8, 1921 to July 5, 1922, upon which charges were based on a unit measurement of 128 cubic feet to the cord, as specifically detailed in the statement attached hereto;

"(4),  That prior to the original order of the department in case No. 5150, it was the practice of the carriers to apply different and more advantageous measurement than that applied after that order; and that the department in its original order in said case No. 5150 did not require any change in past practices.

"Wherefore, petitioner and complainant prays that the aforesaid Northern Pacific Railway Company be required to answer the charges herein and that after due hearing and investigation an order be made commanding the respondent to make reparation on all

shipments upon which the charges were based on a different unit of measurement than 192 cubic feet to the cord, such shipments being more specifically defined in the allegations above.''

The complaint was dated June 5, 1922. There was attached to it a schedule of shipments of twenty-two carloads of short fuel with the rates paid and overcharges on the cars, to the complainant between September 13, 1921 and April 11, 1922.

The department made findings as follows:

''The petitioner is a corporation engaged in the purchase and sale of fuel wood with its office at Seattle, Washington. Between September 13th 1921, and April 11, 1922, the petitioner shipped 22 carloads of fuel from various points in Washington to Seattle upon which respondent assessed charges upon the basis of 128 cubic feet to the cord. Petitioner contends that charges should have been assessed upon the basis of 192 cubic feet to the cord, and that by reason thereof it had been overcharged in the sum of $242.29, as shown by the tabulation attached to its complaint. The fuel wood herein referred to was less than 16 inches in length and was thrown loosely into racks on the cars.

''This matter is the outgrowth of proceedings held jointly before this department and the Interstate Commerce Commission. On April 18th, 1921, this department made and entered its findings of fact and order No. 5150, wherein it established a distant scale of rates for the intrastate transportation of fuel wood not exceeding four feet six inches in length, pulp wood, and wood bolts, within the state of Washington, taking as a basis a cord of 128 cubic feet. Thereafter, complaint having been made to the department that railroads were employing the distant scale of rates on the basis of 128 cubic feet to the cord, to hogged and to 16-inch wood thrown loosely into the car, this department and the Interstate Commerce Commission held further hearings after which this department made and entered its second supplemental findings of fact and order No. 5150, wherein it ordered that charges for the

transportation of fuel and wood not exceeding 16 inches in length when loaded loosely in racked cars shall be based upon 192 cubic feet to the cord.

"The shipments in question were moved between the effective dates of order No. 5150 and second supplemental order No. 5150. Paragraph 2 of findings of fact of our second supplemental order No. 5150, states that prior to the issuance of the original order the carriers had made charges for loosely piled 16-inch wood upon the basis of 192 to 200 cubic feet to the cord. Our first order in cause No. 5150 did not specifically require the discontinuance of such practice and was not intended and should not have been so construed. The evidence herein and in cause No. 5150 incorporated herein by agreement demonstrates that a racked or piled cord (128 cubic feet) of 16-inch wood will occupy approximately 192 cubic feet when thrown loosely into a rack. The evidence further indicates that shippers could not in many instances load the minimum if charges on 16-inch wood piled loosely be based on a cord of 128 cubic feet. The evidence further indicates that the shipper of wood thrown loosely into the cars would be compelled to pay a rate much higher than the shipper of stacked wood if the unit of measurement for loosely piled wood be 128 cubic feet. We are of the opinion that the charges assessed by respondent on the basis of 128 cubic feet to the cord were unjust, unreasonable, and excessive to the extent that the total sum exceeded the charges applicable on the basis of 192 cubic feet to the cord and that petitioner is entitled to recover the difference from respondent."

It was thereupon ordered that respondent (appellant here) forward to the director of the department the sum specified, to be disbursed to petitioner in conformity with ch. 110, Laws of 1921, p. 336. It will be observed that the complaint contains nothing alleging that the charges complained of were either in violation of appellant's tariff, or had been for any reason unjust or unlawful. The department held, however, that the

complaint was sufficient to put appellant upon its defense, and the trial court held the same.

From the findings of the department, it will be noted that there had been a joint hearing of the department with the Interstate Commerce Commission upon which, on April 18, 1921, the department had made its findings of fact and order in cause No. 5150, establishing a distance scale of rates for the intrastate transportation of fuel wood *not exceeding* four feet six inches in length, pulp wood and wood bolts within the state of Washington, taking as a basis a cord of 128 cubic feet. It will be observed that, in those proceedings, no exceptions were made as to the cubical contents of a car of wood although the distance schedule of rates included wood of short lengths, pulp wood, and wood bolts, and, in fact, any wood not exceeding four feet six inches in length. That, thereafter, the carriers applied the distance schedule of rates on the basis of 128 cubic feet per cord to hogged fuel and to 16-inch wood thrown loosely into the car, and that, therefore, after further hearings, the department made its second supplemental order wherein it ordered that charges for the transportation of fuel and wood not exceeding 16 inches in length, when loaded loosely in racked cars, should be based on 192 cubic feet per cord. That second supplemental order, it appears from the record, was dated March 17, 1922, and it specifically provided that the carrier should cease and desist on or before July 1, 1922, and thereafter abstain from collecting charges for the transportation of fuel wood, based upon the rule of 128 cubic feet to the cord for wood of such short lengths and piled loosely in racked cars.

The department itself fixed a future date for the commencement of the operation of its second supplemental order in cause No. 5150. During that time, the standard of measurement for all fuel not exceeding

four feet six inches in length was legally 128 cubic feet per cord. During that time, the carriers complied strictly with the order of the department and after the effective date of the second supplemental order apparently complied strictly with the order basing measurement of short lengths of wood piled loosely in racked cars at 192 cubic feet per cord.

It is manifest, therefore, that, since all the shipments complained of by the Roosevelt Transfer & Fuel Company were received during the period when the department order was in force fixing the standard at 128 cubic feet per cord, there was nothing illegal in what appellant did. The rates and standards were in force and while in force were the only lawful rates and standards. *Chicago, B. & Q. R. Co. v. Merrian & Millard Co.*, 297 Fed. 1.

The orders of the department were prospective and in no way retroactive by their own terms.

The statutes governing the procedure are §§ 10433 and 10434, Rem. Comp. Stat. The first provides:

"When complaint has been made to the commission concerning the reasonableness of any rate, fare, toll, rental or charge for any service performed by any public service company, and the same has been investigated by the commission, and the commission shall determine that the public service company has charged an excessive or exorbitant amount for such service, the commission may order that the public service company pay to the complainant the amount of overcharge so found, with interest from the date of collection."

The second section reads:

"The director of public works shall have power and it shall be his duty, upon complaint in writing being made to him, to determine the amount of overcharge made and refund due in all cases where any public service company, as defined in this chapter, charges

an amount for any service rendered in excess of the lawful rate in force at the time such charge was made, or which may thereafter be declared to be the legal rate which should have been applied to the service rendered, and determine to whom the overcharge should be paid: . . . . ''

Appellant contends that, under § 10433, *supra,* the complaint of the Roosevelt Transfer & Fuel Company did not state a cause of action, and the evidence before the department and the trial court does not warrant any relief.

Respondent relies upon § 10434, *supra,* and also upon § 10345, which contains a provision to the effect that,

"All charges made for any service rendered or to be rendered in the transportation of persons or property, or in connection therewith, by any common carrier, or by any two or more common carriers, shall be just, fair, reasonable and sufficient."

Respondent, therefore, contends that, under § 10434, and § 10345, the rate, in order to be lawful, must not only be the rate found in the tariff of the carrier on file with the department, but must also be "just, fair, reasonable and sufficient;" and that § 10434, *supra,* is designed to include rates charged unlawfully on either ground, and is not restricted to the overcharge of a tariff rate.

We cannot accept the construction of respondent. Section 10434, *supra,* specifies charges for services rendered *"in excess of the lawful rate in force at the time such charge was made."* The charges here made were not in excess, but in conformity, with the lawful rate in force at the time they were made. That section also refers to charges which may "thereafter be declared to be the legal rate which should have been applied to the service rendered;" and this, respondent

thinks, is sufficient to justify the action of the department.

That provision evidently deals with complaints as to charges exacted by carriers which have never been adjudicated, and upon which the department was authorized to find the reasonable charge for such past service, and make it both prospective and retroactive, and provide for reparation. It certainly does not authorize the department to make an order at one time to operate only prospectively, and to return to the same subject-matter later, after the carriers have complied with the order of the department and award reparation of charges legally established, as unjust and unreasonable.

The findings of the department refer to the finding in their second supplemental order in cause No. 5150, which stated that, prior to the issuance of the original order, all carriers had made charges for loosely-piled 16-inch wood upon a basis of 192 to 200 cubic feet per cord. The trial judge seemed, also, to have based his decision largely upon the practice or custom. The *Attorney General* very frankly doubts whether that question has any materiality, and states that the only question involved is whether or not the rate charged during the period complained of is unreasonable, and that he is inclined to agree with counsel that no alleged practice at variance with the tariff is pertinent.

We agree that the alleged prior practice was wholly impertinent. Whatever the purpose of the finding referred to in the second supplemental order in cause No. 5150, it is obvious that the standard was fixed at 128 cubic feet per cord. The new order required all carriers to cease and desist, on or before July 1, 1922, and thereafter abstain from collecting charges on such short wood lengths upon a measurement of 128 cubic feet per cord when piled loosely in racked cars. While

the previous order was in force, the presumption obtained that the standard of 128 cubic feet per cord was a reasonable standard which carriers were obliged by law to observe. That is what appellant did in this case, and it seems to us that it is not to be penalized for complying with the effective orders of the department. Under other statutory provisions, they were liable to prosecutions and fines for non-compliance.

We are firmly convinced that, whether the complaint of the Roosevelt Transfer & Fuel Company was sufficient or not to give jurisdiction to the department, its order was not warranted by the facts and its own record, and was unauthorized and void.

The decisions of the trial court and of the department are therefore both reversed.

TOLMAN, C. J., ASKREN, FULLERTON, and PARKER, JJ., concur.