[No. 21602. Department Two. March 11, 1929.]

OREGON-WASHINGTON RAILROAD & NAVIGATION COMPANY, *Respondent*, v. DEPARTMENT OF PUBLIC WORKS, *et al., Appellants.*[1]

*The Attorney General, H. C. Brodie, Assistant, W. H. Abel,* and *John D. Ehrhart,* for appellants.

*A. C. Spencer, Frank C. Owings, W. A. Robbins,* and *Thos. H. Maguire,* for respondent.

PARKER, J.—This is an appeal to this court by the state department of public works, Independence Logging Company and Markham & Callow, from a judgment of the superior court for Thurston county;

[1]Reported in 275 Pac. 87.

which judgment reversed a decision and order of the department awarding to the logging company and to Markham & Callow reparation as against the railroad company for claimed discriminatory over-charge tariff rates exacted of them by it for log shipments, and also directing the railroad company to name and file a tariff such as will not result in the discrimination of which complaint is made.

For present purposes, we may regard the railroad company as the owner and operator of a main line of railway running easterly from Grays Harbor to Independence and beyond, though other companies are interested therein. This main line runs past Blue Slough, which is a tide water tributary of Grays Harbor into which logs are unloaded from the railroad company's cars. From Blue Slough easterly to Independence is a distance of over thirty miles and less than thirty-five miles. The Independence Logging Company and Markham & Callow have been at all times in question engaged in the logging business, shipping logs over the railroad company's main line from Independence to Blue Slough. The railroad company is also the owner and operator of a branch line railway running southeasterly from its main line near Blue Slough to Primo, a distance of over ten miles and less than fifteen miles. This is known as the North River Branch. At all times in question, there have been logging concerns shipping logs over this branch from Primo to Blue Slough; these shippers being competitors of the Independence Logging Company and Markham & Callow in the Grays Harbor log market. It is the alleged discriminatory tariff of the railroad company, favorable to the Primo-Blue Slough shippers and unfavorable to the Independence-Blue Slough shippers, that gave rise to this controversy.

On October 1, 1925, there became effective a uniform local log freight tariff filed with the department of public works by the Chicago, Milwaukee & St. Paul Railway Company, the Great Northern Railway Company, the Northern Pacific Railway Company and the Oregon-Washington Railroad & Navigation Company, applicable to shipments of logs over all lines of those roads in western Washington. This is a distance tariff; that is, it fixes log freight charges at stated sums, per thousand feet, according to the distance of the haul as follows: Ten miles or less, $1.75; *over 10 and not over 15 miles, $1.95;* Over 15 and not over 20 miles, $2.10; Over 20 and not over 25 miles, $2.20; Over 25 and not over 30 miles, $2.27½; *Over 30 and not over 35 miles, $2.35,* and so on. We have italicized the items with which we are here particularly concerned. This tariff has, since then, remained unchanged, and has not been challenged as a valid, legally established tariff, except as it may have been rendered legally ineffective as to the rights of the Independence Logging Company and Markham & Callow by virtue of the special lower rate accorded by the railroad company to shippers of logs from Primo to Blue Slough. On July 15, 1926, the railroad company petitioned the department of public works for permission to reduce the general tariff rate from $1.95 to $1.75 over the North River Branch from Primo to Blue Slough, stating as its reasons therefor as follows:

"The principal log shippers from the North River Branch of your petitioner are the Saginaw Timber Co., Northwestern Lumber Co. and Anderson & Middleton Timber Co., who have threatened to construct and operate a logging railroad paralleling the North River Branch of your petitioner with view of transporting their logs to the destinations named herein, unless the present rate of $1.95 per 1000 ft. be re-

duced, and to that end they have filed a petition with the department of public works to determine the conditions under which their proposed logging railroad may cross the railroad of your petitioner. These corporations have proposed a rate of $1.75 per 1000 ft. on logs shipped from and to points named herein, and represent they will not construct their logging railroad, but will withdraw their application to the department if the rate of $1.75 per 1000 be granted. Your petitioner is agreeable to its establishment and publication on less than statutory notice, as a concession to prevent the construction by shippers of a competing railroad.''

The department of public works granted this application, endorsing thereon the following:

''The department having considered the foregoing application, it is ordered that leave be granted petitioners to make the rate therein referred to, effective July 20, 1926.''

In December, 1927, Markham & Callow filed their complaint with the department of public works, alleging discrimination resulting to their prejudice as shippers from Independence to Blue Slough, by the railroad company's having accorded to shippers from Primo to Blue Slough a $1.75 rate in place of the regular tariff $1.95 rate, and prayed for an order reducing the $2.35 rate from Independence to Blue Slough in proportion as the Primo-Blue Slough rate was reduced from $1.95 to $1.75; and also prayed for reparation from the railroad company in a large sum as having been unlawfully exacted and collected by the railroad company from them, as shippers from Independence to Blue Slough, after the reduction in the Primo-Blue Slough rate. Thereafter the Independence Logging Company filed its complaint with the department of public works, alleging substantially the same facts and asking the same relief, except as to

the amount of reparation claimed by it. These two cases so instituted before the department of public works were consolidated for hearing, and being so heard, the department, on April 10, 1928, made findings, concluding in substance that the reduction of the Primo-Blue Slough rate from $1.95 to $1.75 was unduly discriminatory as against the regular Independence-Blue Slough rate of $2.35, and thereupon entered its order disposing of the two cases, as follows:

"WHEREFORE IT IS ORDERED that respondent file with this department and thereafter apply, on one day's notice, a tariff or a supplement to a tariff, removing the discrimination herein found to exist, and naming a rate on logs from Independence to Blue Slough not more than 120.5 per cent of the rate named on logs from North River branch line points to Blue Slough.

"IT IS FURTHER ORDERED that respondent pay to complainants by way of reparation, all sums in excess of $2.11 per thousand feet paid by complainants to respondents on logs shipped from Independence to Blue Slough, between July 20, 1926 and the date upon which respondent shall put into effect non-discriminatory rates, said reparation to be forwarded to this department for transmittal to complainants in accordance with the statutes of Washington.

"The parties hereto are directed to ascertain from the records the exact amount of reparation due under this order, and to communicate the same to the department. Jurisdiction is hereby reserved by the department to enter a further order, requiring the payment of reparation by respondent to complainants in the sum agreed upon by the parties, or, if the parties are unable to agree, then in such sum as the department may find is in fact due; and to make such other and further orders as are necessary in the premises."

Thereafter, in due course, the railroad company caused this decision and order of the department to be reviewed by the superior court for Thurston county,

resulting in that court entering its judgment reversing the whole of the decision and order of the department. Thereupon the department, the Independence Logging Company and Markham & Callow appealed from that judgment to this court.

The reparation provisions of our public service statutes, referring to sections of Remington's Compiled Statutes, in so far as need here be noticed, are the following:

"§ 10433. When complaint has been made to the commission [now department of public works] concerning the reasonableness of any rate, fare, toll, rental or charge for any service performed by any public service company, and the same has been investigated by the commission, and the commission shall determine that the public service company has charged an excessive or exorbitant amount for such service, the commission may order that the public service company pay to the complainant the amount of the overcharge so found, with interest from the date of collection."

"§ 10434. The director of public works shall have power and it shall be his duty, upon complaint in writing being made to him, to determine the amount of overcharge made and refund due in all cases where any public service company, as defined in this chapter, charges an amount for any service rendered in excess of the lawful rate in force at the time such charge was made, or which may thereafter be declared to be the legal rate which should have been applied to the service rendered, and to determine to whom the overcharge should be paid: . . ."

■ Was there such unlawful excessive charge exacted by the railroad company from the Independence Logging Company and Markham & Callow as entitles them to reparation from the railroad company as prayed for? We have seen that, looking alone to the duly established general log tariff, applicable alike to the whole of western Washington, not only over the

lines of the respondent railroad company, but also over the other railway lines, the charges exacted from the Independence Logging Company and Markham & Callow for shipments from Independence to Blue Slough were strictly in accord with that tariff. How then can it be said that they were illegally overcharged? Had there been no special $1.75 rate accorded to shippers from Primo to Blue Slough, it is plain from the record before us that the regular tariff charge for shipments from Independence to Blue Slough would not be excessive. Indeed, the findings and conclusions of the department made in these cases do not in the least negative this view. The department's decision amounts only to this: that the Independence-Blue Slough $2.35 rate is excessive, in comparison with the Primo-Blue Slough $1.75 special rate. It seems to us that this condition of our problem calls for the conclusion that the Primo-Blue Slough $1.75 special rate is insufficient, rather than that the Independence-Blue Slough $2.35 rate is excessive.

Mere discrimination, it seems to us, is not of itself sufficient to call for reparation, however much it may call for some other relief or disciplinary measures against the offending carrier. The right of reparation in favor of a complaining shipper, as we understand the law in this state, results only from an overcharge exacted from the complaining shipper, and not from an insufficient charge made to some other favored shipper. If this is not the law, then a carrier giving a rebate, or making less than a regular tariff shipping charge, to a favored shipper, would mean that the offending carrier would have to make reparation accordingly to all shippers who had paid the regular, legally established tariff during the same period, the shipments being accompanied by the same conditions. This, we think, is not the law. Our decision in *North-*

*ern Pac. R. Co. v. Dept. of Public Works,* 136 Wash. 389, 240 Pac. 362, is in harmony with this view.

■ As to the decision and order of the department, directing the railroad company to remove the discrimination found to exist as between the Independence-Blue Slough $2.35 rate and the Primo-Blue Slough $1.75 rate, its order and decision seem to us well founded; that is, the evidence seems to us to have warranted the department in deciding, as it did in substance, that the Independence-Blue Slough and Primo-Blue Slough shipping conditions are so nearly similar, except as to distance, that the rate should be uniform according to distance. In this connection we are to remember that the order of the department neither calls for the lowering of the Independence-Blue Slough $2.35 rate, nor the raising of the Primo-Blue Slough $1.75 rate, and that the railroad company is left free to remove the discrimination by either or both methods, in so far as the rights of these parties are concerned.

We conclude that the judgment of the superior court, in so far as it reverses the decision and order of the department awarding reparation to the Independence Logging Company and Markham & Callow as against the railroad company, must be affirmed; and that the judgment of the superior court, in so far as it reverses the decision and order of the department directing the railroad company to remove the discrimination between the Independence-Blue Slough rate and the Primo-Blue Slough rate, must be reversed. It is so ordered.

The Independence Logging Company and Markham & Callow are awarded their costs incurred in this court. We note that, since the commencement of this controversy before the board of public works, the superior court for Grays Harbor county has appointed

a receiver for the Independence Logging Company. We have in our discussion referred to that company as appellant here merely for convenience of expression. Of course, our disposition of the case affects the receiver.

MILLARD, MAIN, BEALS, and FRENCH, JJ., concur.