MICHIGAN BELL TELEPHONE CO. *v.* PUBLIC SERVICE COMMISSION.

1. PUBLIC SERVICE COMMISSIONS—UTILITY RATES.

A rate made for a public utility by the public service commission furnishes the applicable law for the utility and its customers until a subsequently established lawful rate is made by the commission (Act No. 3, § 6, Pub. Acts 1939).

2. SAME—CHANGE OF UTILITY RATES.

Once a regulatory body has prescribed a rate to be charged for the future by a public utility and subsequently decides that such prescribed rate shall be reduced, it cannot penalize the utility for collecting that rate during the period elapsing between dates of orders prescribing and reducing the rate (Act No. 3, § 6, Pub. Acts 1939).

3. TELEGRAPHS AND TELEPHONES—RATES—RETROACTIVE ORDER—NOTICE.

An order of a public service commission, made on December 28th and requiring that telephone company reduce its gross revenues for the calendar year about to end in a specified amount was clearly retroactive, even though its application were limited to date of preceding notice, where such notice was not of a character instituting rate adjustment.

4. Same—Rates—Retroactive   Readjustment—Public   Service
Commission.

The State public service commission has no express or reasonably
implied authority to alter .or readjust telephone rates or
charges retroactively (2 Comp. Laws 1929, §§ 11038, subd. [a],
11701; Act No. 3, § 4, Pub. Acts 1939).

5. Same—Overcharges.

A charge made by a telephone company in accord with existing
lawfully-established rates for the service rendered is not an
overcharge (2 Comp. Laws 1929, §§ 11038, subd. [a], 11701;
Act No. 3, § 4, Pub. Acts 1939).

6. Public Service Commissions—Construction of Orders Fixing
Rates.

Since a public service commission acts in a legislative capacity
in fixing rates, its order establishing a utility rate must be
construed as a statute of like character would be construed
(Act No. 3, § 6, Pub. Acts 1939).

7. Statutes—Prospective Operation.

All statutes are prospective in their operation excepting in such
cases as the contrary clearly appears from the context of the
statute itself.

8. Same—Construction of Statutes.

Retroactivity in a statute, even where permissible, is not favored,
except upon the clearest mandate, as it is the normal and
usual function of legislation to discriminate between closed
transactions and future ones or others pending but not com-
pleted.

9. Public Service Commissions—Telephone Rates—Statutes.

The public service commission has only such power relative to
fixing the rates or earnings of a telephone company as is by
statute expressly or by necessary implication vested in it (Act
No. 3, Pub. Acts 1939).

10. Same—Telephone Rates—Orders Effective Prospectively
Only.

The orders of the public service commission fixing telephone
rates are effective prospectively only (2 Comp. Laws 1929,
§§ 11038, subd. [a], 11701; Act No. 3, § 4, Pub. Acts 1939).

11. Appeal and Error—Questions Reviewable—Constitutional
Law—Rate-making Power of Public Service Commission.

Whether or not a statute empowering the public service commis-
sion to make rates is constitutional, is not decided where com-
mission's power in such respect is construed as limited to

making rates that are prospective, not retroactive, in effect, determination of such question not being necessary to decision of case (Act No. 3, Pub. Acts 1939).

12. COSTS—PUBLIC QUESTION—PUBLIC SERVICE COMMISSION—TELEPHONE RATES.

No costs are awarded in suit involving the determination of the scope of the public service commission's power to make telephone rates, a question of public concern being presented (2 Comp. Laws 1929, §§ 11038, subd. [a], 11701; Act No. 3, § 4, Pub. Acts 1939).

Appeal from Ingham, Carr (Leland W.), J. Submitted June 7, 1946. (Docket No. 30, Calendar No. 43,369.) Decided September 11, 1946.

Bill by Michigan Bell Telephone Company against Michigan Public Service Commission to have an order of the defendant declared unlawful. City of Detroit intervened as a party defendant. Decree for plaintiff. Defendant and intervening defendant appeal. Affirmed.

*Thomas G. Long, Karl F. Oehler, James Morgan Smith,* and *Butzel, Eaman, Long, Gust & Kennedy,* for plaintiff.

*John R. Dethmers,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *James W. Williams,* Assistant Attorney General, for defendant.

NORTH, J. Following the conclusion of a hearing before the Michigan public service commission, on December 28, 1944, the Michigan Bell Telephone Company was ordered to reduce in the amount of $3,500,000 its gross revenues from its Michigan operations for the year 1944, and to make pro rata refund thereof to its Michigan subscribers. For brevity we herein refer to the Michigan Bell Telephone Company as the telephone company and to the Michigan public service commission as the com-

mission. The telephone company reviewed the commission's order by bill in chancery in the circuit court of Ingham county, as is provided by statute. Act No. 300, § 26, Pub. Acts 1909.* Hearing in the chancery court resulted in a decree vacating the order of the commission. This appeal from such decree is by the commission and the city of Detroit, the latter having been permitted to intervene in the chancery case. However, the city has not filed a brief, and for that reason we herein designate the commission as appellant. The factual background of, and the issues raised on, this appeal are disclosed by the following, quoted from the opinion of the trial judge:

"The plaintiff in this case now is and for a number of years past has been engaged in conducting a telephone business in Michigan, rendering both interstate and intrastate service. Since 1936 it has charged and collected rates in accordance with the schedule prescribed in that year by the Michigan public utilities commission. Such minor changes as have been made from time to time have been brought about by extensions of service.

"Under date of October 3, 1944, the defendant Michigan public service commission (successor to the Michigan public utilities commission) gave notice to the plaintiff that an investigation would be held to determine whether the plaintiff's profits were too high, and also whether it was charging unnecessary and avoidable expenses against the public. Formal hearing was set for October 17th, at which time an adjournment for several weeks was taken, for the purpose of permitting the preparation of a proper exhibit, or exhibits, showing the separation of plaintiff's business between the interstate and the intrastate. When this work was done, hearings before the commission were had and testimony was

---

* As amended by Act No. 145, Pub. Acts 1915 (2 Comp. Laws 1929, § 11042 [Stat. Ann. § 22.45]).—REPORTER.

taken, relating principally to the rate of return, the depreciation charges, and the value to plaintiff of the services rendered to it by the American Telephone & Telegraph Company under a so-called 'license contract' in force between the corporations. The proceeding before the commission covers approximately 800 pages of typewritten transcript. Following the hearing the commission made its order, bearing date the 28th of December, 1944, which order was served on plaintiff the following day.

"From the testimony taken before it, the commission came to the conclusion that for the year 1944 the company had made excessive depreciation charges to the amount of $250,000 and that its payments to the American Telephone & Telegraph Company were too high by an equal amount. It was further determined that of the sum of $4,404,000 set aside by plaintiff to be used in payment of the Federal excess profits tax, the sum of $3,000,000 should be regarded as avoidable expense. It was therefore ordered that the plaintiff reduce its gross revenues attributable to its intrastate operations for the year 1944 in the total sum of $3,500,000. Plaintiff was further required by the terms of said order to submit to the commission a plan, or plans, for the distribution of said fund to plaintiff's subscribers during the year in question.

"The plaintiff has taken an appeal (to the Ingham county circuit court) from said order, insisting, in substance, that the defendant commission was wholly without authority to require the making of a refund to subscribers of rates collected in accordance with the authority granted by the State in the orders of the public utilities commission; and that the operation of said order will deprive plaintiff of its property without due process of law, in violation of the State and Federal constitutional provisions. Defendants argue that plaintiff's objections to the order are not well taken, and insist, in substance, that the legislature has delegated to the commission

authority to take such action as the commission may deem proper in cases of this character."

In the circuit court the case was submitted on the record made at the hearing before the commission. On this appeal the primary question presented in appellant's brief reads:

"After first giving adequate notice to a utility that its rates and charges will be subject to adjustment to avoid incurring liability for and the subsequent payment of Federal 'excess profit taxes,' may the Michigan public service commission, for the period subsequent to the notice, issue an order effecting a reduction in the revenues of the utility, through a refund to its customers, to compel the utility to avoid an unnecessary expense, such expense being part of the company's 'excess profit taxes,' when at the date of the order the liability for such taxes had not affixed and the remainder in revenues to the utility is sufficient for a reasonable return?"

In view of the scope of the commission's order, we think the fundamental question may be stated thus: Has the commission statutory power to order retroactively a refund to be made by the telephone company to its subscribers out of charges for services rendered (and in large part paid prior to the date of the order), such charges having been made in conformity with the existing rates fixed by the commission (or its predecessor) and in effect during the time the services were rendered?

The theory of the commission as stated in its brief is as follows:

"The theory of the Michigan public service commission is that, acting upon a complaint or upon its own motion, after having given adequate notice to the utility that there is probable cause for belief that the rates and charges of the utility are excessive and

unreasonable, or that the utility is requiring the consuming public to bear and pay unnecessary expenses, the commission may conduct an investigation (during which the utility shall be accorded a full opportunity to be heard) to establish the facts; and, if the facts be that the rates and charges of the utility are excessive and unreasonable, or that the consuming public is required to pay unnecessary elements of expense, and that such were the facts as of the date of the notice, the commission, by virtue of the powers and authority in it vested by Act No. 3, Pub. Acts 1939, may order the utility to repay all the excess charges collected by it subsequent to the date of the notice."

The pertinent portion of Act No. 3, Pub. Acts 1939, reads:

"The Michigan public service commission is hereby vested with complete power and jurisdiction to regulate all public utilities in the State except any municipally owned utility and except as otherwise restricted by law. It is hereby vested with power and jurisdiction to regulate all rates, fares, fees, charges, services, rules, conditions of service and all other matters pertaining to the formation, operation, or direction of such public utilities. It is further granted the power and jurisdiction to hear and pass upon all matters pertaining to or necessary or incident to such regulation of all public utilities, including electric light and power companies, whether private, corporate or cooperative, gas companies, telephone, telegraph, oil, gas, and pipeline companies, motor carriers, and all public transportation and communication agencies other than railroads and railroad companies." Act No. 3, § 6, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 11017-6, Stat. Ann. 1945 Supp. § 22.13 [6]).

Decision hinges on the proper construction of the above quoted section and of any other pertinent

statutory provision pertaining to the power of the commission to require a refund out of rates or charges which accrued prior to the date of the commission's order, under such circumstances as are presented by the instant record. The trial court was not in accord with the theory and contention of appellant, but on the contrary held that under the pertinent statutory provisions the commission did not have the right or power to make an order as to rates and charges which in effect was retroactive, and that in consequence thereof the notices or orders, herein referred to, which the commission had made and caused to be served in this proceeding prior to its order of December 28, 1944, were immaterial.

We do not accept appellant's contention that the issue of the commission's order being retroactive is controlled by the date of the commission's notice of October 3, 1944, (or earlier notices) served on the telephone company. As above noted, appellant's theory is that "by virtue of the powers and authority in it vested by Act No. 3, Pub. Acts 1939 (the commission) may order the utility to repay all the excess charges collected by it subsequent to the date of the notice." In effect the notice of October 3d fixed October 17, 1944, as a date of hearing. The telephone company appeared, the hearing was adjourned from time to time, and on December 28, 1944, the commission entered its finding and order which in part reads:

"We conclude therefore that this commission does possess the power to prevent unnecessary elements of expense being charged against the consuming public and to make whatever adjustments are necessary to effectuate that result. We likewise conclude

that this record and our findings of fact require us
to exercise that power, accordingly:

"It is ordered that the Michigan Bell Telephone
Company, a Michigan corporation, reduce its gross
revenues attributable to its intrastate operations
for the year 1944, in the sum of $3,500,000.  *  *  *

"It is further ordered that the Michigan Bell Tele-
phone Company, on or before the 15th day of
January, 1945, submit to this commission a plan or
plans for the distribution of the foregoing funds to
its subscribers."

Appellant asserts that since there is no express
limitation in the statute, the commission's "juris-
diction" (evidently meaning power to alter rates or
order a refund) attached as soon as the notice of the
investigation, which was tantamount to a complaint
by a customer of the telephone company, was filed.
In support of this contention appellant cites the
following authorities: *Marinette, T. & W. R. Co.* v.
*Railroad Comm.*, 195 Wis. 462 (218 N. W. 724);
*Pacific Coast Elevator Co.* v. *Department of Public
Works*, 130 Wash. 620 (228 Pac. 1022); *State, ex rel.
Standard Oil Co.*, v. *Department of Public Works*,
185 Wash. 235 (53 Pac. [2d] 318); *State, ex rel.
Model Water & Light Co.*, v. *Department of Public
Works*, 199 Wash. 24 (90 Pac. [2d] 243); *Boston &
Worcester R. Corp.* v. *Western R. Corp.*, 80 Mass.
253; *Great Northern R. Co.* v. *Sunburst Oil & Refin-
ing Co.*, 287 U. S. 358 (53 Sup. Ct. 145, 77 L. Ed.
360, 85 A. L. R. 254).

As pointed out in appellee's supplemental brief,
none of the above cases are in point or controlling of
the phase of the instant case under consideration.
Suffice to note that in the two cases first above cited,
unlike the instant case, there had been no previous
rate-fixing order governing the charges to be made

for the services rendered. In the *Marinette, T. & W. R. Co. Case* the court said: "But aside from these considerations, in the instant case the rate to which the railroad commission found the Tomahawk Kraft Paper Company entitled had never been fixed by the commission. * * * Even though reparations are not permissible where rates collected are sanctioned by orders of the railroad commission, it seems clear that prior to the order here under consideration the railroad commission had never sanctioned or established a rate for these movements." In the third and fourth cases in the above cited list, recovery by the plaintiffs seeking reparations was denied, and therefore neither case adjudicated, as a controverted issue, the question under consideration, *i. e.*, to what point of time may awarded refunds or reparations be computed. Nor is the Massachusetts case in the above list in point because in that case upon petition of parties interested a commission was appointed for the purpose of arbitrating controversial rate matters between the litigants; and the relief granted was within the scope of the petition for the arbitration. Obviously, the permissible scope of relief in such a case is not decisive of that in the instant proceedings. As to the last case in the above list it is sufficient to observe, as will hereinafter be noted, that decision turned upon the fact that the established rates involved, unlike those in the present case, were only "provisional and tentative" and both the carrier and the shipper so understood at the time of the transactions out of which the controversy arose.

In the instant case all the rates and charges imposed by the telephone company on its customers prior to December 28, 1944, were lawfully imposed, since such rates and charges were authorized by the

commission's predecessor, and had not been altered prior to the date just above noted; and further, that the revenues thus collected became the property of the telephone company. In *Cheltenham & Abington Sewerage Co.* v. *Pennsylvania Public Utilities Comm.*, 344 Pa. 366 (25 Atl. [2d] 334), a case was presented wherein the commission, on December 11, 1934, on its own motion (as in the instant case) instituted proceedings inquiring into the reasonableness of rates imposed by the plaintiff. The proceedings resulted in an order dated August 30, 1935, fixing lower rates; and on review in the superior court, it was held that recovery for excess charges might be had from December 11, 1934, the date when the commission instituted the inquiry into the rates. On appeal the supreme court held:

"The principal matter to be determined in this appeal is the earliest date from which reparations may be allowed on account of any claims made in this proceeding. * * * A commission-made rate furnishes the applicable law for the utility and its customers until a change is made by the commission. The utility was entitled to rely on the order of 1931 (which originally fixed the rate) until August 30, 1935 (the date of the commission's order fixing lower rates), but thereafter might be liable for reparations."

As bearing upon the same phase of the law, in *Baltimore & O. R. Co.* v. *Pennsylvania Public Utilities Comm.*, 136 Pa. Super. 517 (7 Atl. [2d] 488), the court said:

"The principle clearly laid down is that when a regulatory body has prescribed a rate to be charged for the future by a public utility and subsequently decides that such prescribed rate should be reduced, it cannot penalize the utility for collecting that rate

during the period elapsing between the date of the order prescribing the rate and the date of the subsequent order reducing it."

In *T. R. Miller Mill Co.* v. *Louisville & N. R. Co.,* 207 Ala. 253, 258 (92 South. 797, 802), the court on rehearing held:

"Section 5527 * provides, as already noted, that the printed and published schedules 'shall be the lawful rates when approved by the railroad commission.' Such schedules cannot be made unlawful for and during the period of their approved operation by any subsequent retroactive finding and order of the commission."

To like effect see, also, the *per curiam* opinion of the court on rehearing in *Wisconsin Telephone Co.* v. *Public Service Commission,* 232 Wis. 274, 368 (287 N. W. 593); and *Mountain States Telephone & Tel. Co.* v. *Public Service Comm.,* 107 Utah, 502, 530 (155 Pac. [2d] 184, 158 Pac. [2d] 935). We conclude that orderly protection of the rights of the parties concerned requires the holding in law that a lawfully established rate remains in force until altered by a subsequently established lawful rate.

As already noted, on December 28, 1944, the commission entered an order, designated as an interim order, by which it sought, through an ordered refund, to reduce the amount of the telephone company's 1944 revenues, accrued under the existing schedule of rates and charges, in the amount of $3,500,000. Thus the question is presented as to the commission's right or power to make the order which, beyond controversy, was in effect retroactive. That the order of December 28, 1944, was retroactive clearly appears on its face. It provided that the telephone company should "reduce its gross revenues * * * for the year 1944, in the sum

* Alabama Code of 1907,—Reporter.

of $3,500,000.'' But appellant asserts that at least the order was not retroactive if limited in its application to the period beginning with the notice of October 3, 1944. Prior ''notices'' or ''requests'' of the commission served on the telephone company were clearly not of a character to be considered as instituting a rate adjustment proceedings.

There is no express or reasonably implied statutory provision authorizing the commission to alter or readjust telephone rates or charges retroactively. Appellant points out that Act No. 3, § 4, Pub. Acts 1939, provides:

''All the rights, powers, and duties vested by law in said Michigan public utilities commission, and in the Michigan railroad commission and transferred to the Michigan public utilities commission, shall be deemed to be transferred to and vested in the Michigan public service commission hereby created, and shall hereafter be exercised and performed by said commission.''

In connection with the above statutory provision appellant properly notes that Act No. 206, § 2, Pub. Acts 1913, * vested in the Michigan railroad commission ''the general control of all telephones, telephone lines and telephone companies within the State.'' But reference to the Michigan railroad commission statute (Act No. 300, Pub. Acts 1909) discloses that the power of the railroad commission to fix rates was quite clearly prospective only. Section 22 subd. (a) of Act No. 300, † provides that after hearing upon notice to the affected utility, if a rate ''shall be found to be unreasonable, inadequate or unjustly discriminatory, the commission shall have power to and it shall determine and by order fix and order substituted therefor, such rate

---

* 2 Comp. Laws 1929, § 11701 (Stat. Ann. § 22.1442).—REPORTER.
† 2 Comp. Laws 1929, § 11038 (Stat. Ann. § 22.41).—REPORTER.

or rates' * * * and charges, as is or are just
and reasonable, and which shall be the maximum
*to be charged in the future,* and such classifications,
regulations, practice or service as is or are just,
reasonable and adequate, and which shall be im-
posed and followed or (for) service *rendered in
the future* in lieu of that found to be unreasonable."

As rendering a statute of like purport prospective
only in its effect, and as pointing out the distinction
in the scope of remedy between the New York stat-
ute and that provided in the interstate commerce
act, see *Purcell* v. *Railroad Co.,* 268 N. Y. 164, 170
(197 N. E. 182).

In *Detroit & M. R. Co.* v. *Michigan Railroad Com-
mission,* 171 Mich. 335, 346, this Court referring to
rate-fixing orders of the Michigan railroad commis-
sion said: "Its orders stand until modified or set
aside by it or by the courts." We cannot accept
appellant's contention that the public service com-
mission, in consequence of there having been vested
in it the former powers of the Michigan railroad
commission, may make a retroactive rate order.
Nor are we in accord with the assertion in appel-
lant's first brief, but seemingly abandoned in its
supplemental brief:

"If the rules concerning railroad rates are to
be applied to telephone rates, then it would follow
that as to telephone rates the commission would
have the power to award damages for past *over-
charges.*"

That conclusion is not applicable to the instant
case, because in a correct sense "overcharges" are
not here involved. Instead the telephone company's
charges were in accord with the existing lawfully
established rates for the services rendered.

Nor do we agree with appellant's contention that
from its broad statutory powers it should be *im-*

*plied* that the commission is authorized to retroactively adjust charges or rates previously fixed, when circumstances arise which seem to call for such readjustment. In fixing rates the commission acts in a legislative capacity; and an order of the commission establishing a utility rate must be construed as a statute of like character would be construed. In *Harrison* v. *Metz,* 17 Mich. 377, Justice COOLEY said: "legislation is to have a prospective operation only, except where the contrary intent is expressly declared or is necessarily to be implied from the terms employed." More recently we have held: "That all statutes are prospective in their operation excepting in such cases as the contrary clearly appears from the context of the statute itself." *Detroit Trust Co.* v. *City of Detroit,* 269 Mich. 81. The Federal supreme court lately said:

"Retroactivity, even where permissible, is not favored, except upon the clearest mandate. It is the normal and usual function of legislation to discriminate between closed transactions and future ones or others pending but not completed." *Claridge Apartments Co.* v. *Commissioner of Internal Revenue,* 323 U. S. 141 (65 Sup. Ct. 172, 89 L. Ed. 139).

See, also, *In re Dissolution of Ever Krisp Food Products Co.,* 307 Mich. 182. In the light of the foregoing and other authorities, it must be held that the commission has only such power relative to fixing the rates or earnings of the telephone company as are by statute expressly or by necessary implication vested in it. Under such rule we cannot find that the commission has either express or implied statutory power to retroactively reduce appellee's rates or its accrued earnings. Instead the commission's rate-fixing orders are effective only prospectively.

In this respect the authorities about to be cited (as well as some already noted) clearly sustains appellee's position, stated in its brief as follows:

"The impropriety and invalidity of the order of December 28, 1944, on this ground (*i.e.*, that it is in effect retroactive) should be clear. For the State to prescribe utility rates, forbid the utility to charge any other rates, and then say that those rates may be declared unjust and unreasonable as applied to executed transactions shocks the conscience. Under such a rule how could the utility order its affairs? If an order may be made retroactive for one year, why not for any period (in the absence of a statute of limitations) and what then becomes of the commitments the utility may have made in the belief that the sums it has earned and collected belong to it? Reason, common fairness and precedent combine to establish the rule that the charter of a commission's powers should not be construed to permit it to impugn its own legislative acts with retroactive effect unless the statutes affirmatively require such a construction."

While *Arizona Grocery* v. *Railway Co.*, 284 U. S. 370 (52 Sup. Ct. 183, 76 L. Ed. 348), arose under a ruling of the interstate commerce commission and is designated as a reparations case, in point of law, it is quite controlling of the instant case. We quote the following headnotes:

"When the commission by its authority under the transportation act declares a specific rate to be the reasonable and lawful rate for the future, it exercises a legislative function and its pronouncement has the force of a statute. This is well established as to the fixing of specific rates by State commissions, and in this respect there is no difference between authority delegated by a State legislature and that conferred by congress.

"When the commission fixes a maximum rate, or maximum and minimum rates, the carrier is not obliged at its peril to see that the rates it maintains within the limits so authorized are reasonable.

"In declaring a maximum rate the commission exercises a delegated power legislative in character, and may act only within the scope of the delegation; its authority is to fix a maximum reasonable rate, and it is precluded by the statute from fixing one which is unreasonable.

"When the carrier establishes a rate within the limits of the commission's order, that rate becomes a lawful—that is, a reasonable—rate.

"Where the commission has made an order having a dual aspect, it may not in a subsequent proceeding, acting in its quasi-judicial capacity, ignore its own pronouncement promulgated in its quasi-legislative capacity and retroactively repeal its own enactment as to the reasonableness of the rate it has prescribed."

Further, in the body of its opinion the court said:

"It (the commission) could repeal the order as it affected future action, and substitute a new rule of conduct as often as occasion might require, but this was obviously the limit of its power, as of that of the legislature itself."

Again in *Atlantic Coast Line* v. *Florida,* 295 U. S. 301 (55 Sup. Ct. 713, 79 L. Ed. 1451) the Federal supreme court held, quoting syllabus:

"The interstate commerce commission (the powers of which are very similar to the powers of the Michigan commission in the respect under consideration) has jurisdiction, exclusive of that of any court, to set aside intrastate rates which discriminate unduly against interstate commerce, *but its order is prospective only and it can not in such case give reparation for the past.*"

In *State, ex rel. Boynton,* v. *Public Service Commission,* 135 Kan. 491 (11 Pac. [2d] 999), the supreme court of Kansas said:

"It seems clear that when a rate has been the subject of a deliberate inquiry in which the carriers, the shippers and the commission's own experts have participated, as well as any and all other persons who cared to take a hand in it as the statute provides and permits (R. S. §§ 66–111, 66–112, 66–113), any rate so prescribed by the commission and put into effect by the carriers may be confidently collected and retained by them as their very own, without misgiving that at some future time a further hearing of the commission may be had and more evidence taken and a different conclusion reached, and those rates condemned as unreasonable, and reparation certificates allowed for the difference between the rates which the commission did authorize and the rates which it should have authorized. Such a method of regulating public utilities has none of the earmarks of due process of law nor of the simplest notions of justice. Nor would it be worth the while of any shipper to receive such a reparation certificate, for it would not serve as a justifiable basis of recovery. That point, at least, was laid at rest by the recent decision of the supreme court of the United States in *Arizona Grocery Co.* v. *Railway Co.,* 284 U. S. 370 (52 Sup. Ct. 183, 76 L. Ed. 348)."

*Montana Horse Products Co.* v. *Railway Co.,* 91 Mont. 194 (7 Pac. [2d] 919), is a case of like purport. It overruled an earlier Montana case (*Doney* v. *Railway Co.,* 60 Mont. 209 [199 Pac. 432]) and in its later decision the court said:

"It truly would be an anomalous situation, were the commission, acting as a quasi-judicial tribunal, permitted to find that the carrier had violated the law because it charged a rate prescribed by the

commission itself, acting in its legislative capacity. The commission's findings, lowering the rates upon finding existing rates unreasonable, are not, and could not lawfully be made, retroactive.   *   *   *

"Under our statutes, so long as the rates established by the commission are in force, they are presumed to be reasonable, and neither the commission nor the courts have power retroactively to declare such established rates unreasonable, and thus permit the recovery of damages to the extent of the overplus paid by a shipper or an undercharge collected by the carrier."

Appellant in support of its contention that the commission acted lawfully in the instant case, and that the telephone company "could be required to make a refund "cites *Great Northern R. Co.* v. *Sunburst Oil & Refining Co.,* 287 U. S. 358 (53 Sup. Ct. 145, 77 L. Ed. 360, 85 A. L. R. 254). Our reading of the court's opinion in that case leads to the conclusion that it is not in point with or controlling of the instant case; and this is true notwithstanding the court in the cited case said:

"By implication of law there has been written into the (Montana) statute a notice to all concerned that payments exacted by a carrier in conformity with a published tariff were subject to be refunded if found thereafter, upon sufficient evidence, to be excessive and unreasonable."

The above is not pertinent to decision in the instant case because, as appears from the opinion in the cited case, the statute of Montana (unlike the Michigan statute) under which the cited case arose, vested the board of railroad commissioners with the power to fix "*provisional* and *tentative*" rates. This appears from the following headnote.

"Where the State law prescribes freight rates through a board but allows a shipper who has paid

at a rate so fixed an action for overcharges when the board, afterwards, on his complaint and on sufficient evidence, finds such rate excessive and lowers it for the future, judgment for the shipper does not impair any Federal right of the railroad, since the law, making the rate thus tentative, was the basis of the contract of shipment."

And it may be noted that the court, referring to its holding in the *Sunburst Company Case,* said: "*Arizona Grocery Co.* v. *Railway Co.,* 284 U. S. 370 (hereinbefore quoted), holds nothing to the contrary."

Nor, for reasons about to be noted, are we of the opinion that decision in *United States* v. *Morgan,* 307 U. S. 183 (59 Sup. Ct. 795, 83 L. Ed. 1211), upon which to some extent appellant relies, is controlling of the instant case. The *Morgan Case,* in which four of the supreme court justices did not concur, involved procedural requirements incident to an order of the secretary of agriculture fixing rates to be charged for stockyard services under the packers and stockyards act, 1921, 42 Stat. at L. 159 (7 USCA, §§ 181–229). The secretary's order was made June 14, 1933, and it reduced previous rates. There was no attempt to order refunds or reparations prior to the date of the secretary's reducing order; whereas, in the instant case, there was no order by the commission reducing prior rates or charges, and hence the refund ordered antedated any reduction of rates. Decision in the *Morgan Case* turned upon the court's finding that the secretary's order of June 14, 1933, while a voidable order, still this "administrative order was not a nullity." So in the *Morgan Case* the controverted distribution of impounded charges involved only such charges and payments as were made subsequently to the date of a governing order of the secretary

of agriculture. And it is worthy of note that in the *Morgan Case* the court specifically said, as we herein hold, "the administrative agency could prescribe rates only for the future."

*Dayton-Goose Creek R. Co. v. United States,* 263 U. S. 456 (44 Sup. Ct. 169, 68 L. Ed. 388, 33 A. L. R. 472), cited and in part quoted by appellant, is not a pertinent authority or helpful of decision in the instant case because decision therein, as noted by Chief Justice Taft, turned upon the so-called "recapture" provisions of the transportation act of 1920 (41 Stat. at L. 456, 489–491). The so-called "recapture" provisions of the act provided that charges of a utility which should, subsequently to receipt of same, be found to be excessive were held in trust for the United States by the utility, subject to being subsequently accounted for as, provided in the congressional act. There is no comparable provision in the statutory law of Michigan, with the possible exception of the provision, not applicable to the instant case, found in Act No. 300, § 10, subd. (g), Pub. Acts 1909, as amended (2 Comp. Laws 1929, § 11026 [Stat. Ann. § 22.29]). As to the distinguishing provision of the interstate commerce act, as amended by the United States transportation act of 1920, see *Purcell v. Railroad Co., supra.*

Likewise decision in *Oklahoma Gas Co. v. Oklahoma,* 258 U. S. 234 (42 Sup. Ct. 287, 66 L. Ed. 590), noted in appellant's brief, is not in the same field of law as the instant case. The facts in the cited case are that the utility failed to furnish gas of the quality and with pressure which it was obligated by its franchise to furnish. Nonetheless the utility's customers were compelled to pay the maximum rate for service. To the extent of the utility's failure to render the service required by its franchise, recovery by the utility's customers was permitted. In

the instant case there is no claim, nor under the record could there be, that the telephone company has not fully complied with service requirements. In deciding the *Oklahoma Case* the Federal supreme court said:

"It was simply and clearly the determination of what the franchise of the company required and the obligation to perform it, and the failure to perform justified a reduction of the fees charged or, if paid, a proportionate repayment."

To the point under consideration, many authorities in harmony with our conclusion might be quoted. It is sufficient to note the following: *Texas Co.* v. *Chicago & A. R. Co.* (C. C. A.), 117 Fed. (2d) 210; *Farmers Union Livestock Commission* v. *Railroad Co.*, 135 Neb. 689 (283 N. W. 498); *Chicago, B. & Q. R. Co.* v. *People,* 77 Ill. 443; *Commonwealth, ex rel. Town of Appalachia,* v. *Old Dominion Power Co.,* 184 Va. 6 (34 S. E. [2d] 364); *Northern P. R. Co.* v. *Department of Public Works,* 136 Wash. 389 (240 Pac. 362); *Denver & R. G. R. Co.* v. *Public Utilities Commission,* 73 Utah, 139 (272 Pac. 939); *St. Louis-S. F. R. Co.* v. *State,* 155 Okla. 236 (8 Pac. [2d] 744); *Producers Refining Co.* v. *Missouri K. & T. R. Co.* (Tex. Comm. App.), 13 S. W. (2d) 679; *Great Western Portland Cement Co.* v. *Public Service Commission,* 121 Kan. 531 (247 Pac. 881); *E. L. Young Heading Co.* v. *Payne,* 127 Miss. 48 (89 South. 782); *Texas & P. R. Co.* v. *Railroad Commission,* 137 La. 1059 (69 South. 837); *Woodrich* v. *Railway Co.* (C. C. A.), 71 Fed. (2d) 732 (97 A. L. R. 401); *El Paso & S. W. R. Co.* v. *Arizona Corporation Commission,* 51 Fed. (2d) 573. We note again that our conclusion is: the commission exceeded its statutory powers in attempting to enforce its December 28th order retroactively.

The commission's power to fix utility rates and charges is limited to orders which are prospectively effective.

In view of our holding herein it is not necessary to pass upon the constitutionality of the statutory provisions in Act No. 3, Pub. Acts 1939, which vests the commission with rate-making and other regulatory powers. As we understand the record the constitutional question was advanced by appellee on the assumption we might hold that the statute empowered the commission to give retroactive effect to its December 28, 1944, order; and in that event, appellee asserts that it would have been deprived of property rights without due process of law in violation of State and Federal constitutional provisions. Since we hold that the commission's December 28th order cannot be given retroactive effect, the contemplated constitutional question need not be considered. It is not essential to decision herein.

The decree entered in the circuit court is affirmed, but no costs will be awarded since a question of public concern is presented.

BUTZEL, C. J., and SHARPE, BOYLES, REID, and NORTH, JJ., concurred. CARR and BUSHNELL, JJ., did not sit. STARR, J., took no part in the decision of this case.