MICHIGAN CONSOLIDATED GAS COMPANY v
PUBLIC SERVICE COMMISSION

Docket No. 247931. Submitted November 9, 2004, at Lansing. Decided
November 23, 2004, at 9:10 a.m.

The Michigan Public Service Commission (PSC) ordered that Michigan Consolidated Gas Company (MichCon) reduce its gas costs for purposes of calculating its gas cost recovery (GCR) factor for 2002. MichCon appealed.

The Court of Appeals *held*:

1. The adjustment to allowable 2002 gas costs does not by itself determine whether the total MichCon receives for 2002 gas services affords it a fair return, and the adjustment cannot produce a confiscatory rate if the overall rate allowed during that period provides a fair return. A claim of an unconstitutionally confiscatory rate is not ripe for consideration before a reconciliation proceeding for that period is conducted.

2. The order did not violate the prohibition against retroactive ratemaking. The adjustment was not an unlawful rate reduction because the PSC did not adjust the amount it had already authorized MichCon to charge for gas or determine that amount was unreasonable and the order did not alter any term of MichCon's gas customer's choice program for 1999 to 2001. Rather, the order was part of the proceeding to set the rate that MichCon will be approved to charge for gas in 2002.

3. While the adjustment may effectively require MichCon to sell some gas in 2002 for less than it paid for it, the adjustment was not an improper refund from MichCon's profits on the sale of gas for 1999 to 2001. The PSC did not order MichCon to refund any amount to its customers. Setting a GCR factor for a given plan year does not constitute ordering a utility to make a refund, even if the utility is precluded from recovering the full cost of gas as part of the GCR factor during the plan year because the PSC determined that the utility unreasonably and imprudently obtained some of that gas at an unduly high price.

4. MCL 460.6h(6) requires the PSC to evaluate the reasonableness and prudence of the decisions underlying MichCon's 2002

GCR plan. The unambiguous language of MCL 460.6h(6) allows the PSC to consider any relevant factor in reviewing a GCR plan. The PSC's review of a GCR plan necessarily involves consideration of events and decisions in years preceding the GCR plan year, such as MichCon's removal of gas from storage in 2001. Although its GCR process was suspended from 1999 to 2001, MichCon was on notice that it could be subject to PSC regulation, including evaluation of underlying decisions regarding the use of stored gas in a 2002 GCR process.

5. The PSC's earlier order in PSC Case No. U-11682 cannot reasonably be read as assuring MichCon that its decisions in 2001 would not be considered for purposes of a 2002 GCR plan year proceeding. Although that order did not expressly prohibit Mich-Con's withdrawing gas from storage and transferring purchases of new gas to 2002 at higher rates, the PSC did not intend by its order to authorize MichCon to shift costs related to the flat rate authorized from 1999 to 2001 to customers in later years and thereby increase the rate the customers would subsequently pay.

6. The PSC's consideration in a 2002 GCR proceeding of events that occurred in 2001, while MichCon's GCR clause was suspended, did not involve retroactive application of MCL 460.6h, a statute in force since 1982.

7. The PSC's decision was reasonable and supported by the evidence. It appeared that MichCon was motivated to seek a flat rate for gas from 1999 to 2000 in part by the possibility of obtaining larger profits by selling gas acquired at market rates below the flat rate. The PSC effectively concluded that MichCon simultaneously accepted that it would bear the risk of losing money during that period if market prices rose above the flat rate and would not transfer the losses to customers. Given this, the rationale for the PSC's order was that MichCon's unusually large withdrawals of gas from storage in 2001 were inappropriate attempts to avoid the consequences of its undertaking by substantially reducing its 2001 losses through delaying gas purchases at market price until 2002 so it could pass the greater cost on to its customers. It was reasonable for the PSC to conclude that this was not reasonable and prudent and that MichCon was not entitled to full reimbursement for the cost of gas at an unwarranted high price.

8. The law of the case doctrine does not apply to the PSC order in PSC Case No. U-11682 because the PSC is not an appellate court. Its prior order did not address any issue regarding Mich-Con's 2002 GCR factor and was consistent with the order in this case.

Affirmed.

PUBLIC UTILITIES — GAS COST RECOVERY FACTOR — REFUND OF PROFITS.

> Setting a gas cost recovery (GCR) factor for a given plan year does not constitute ordering a utility to make a refund, even if the utility is precluded from recovering the full cost of gas it provides as part of the GCR factor during that year because the Public Service Commission determined that the utility unreasonably and imprudently obtained some of that gas at an unduly high price.

*Foster Swift Collins & Smith, P.C.* (by *William K. Fahey, Stephen J. Rhodes, Michael J. Schmedlen,* and *Peter R. Albertins*), and *Richard P. Middleton* for Michigan Consolidated Gas Company.

*Michael A. Cox,* Attorney General, *Thomas L Casey,* Solicitor General, and *David A. Voges, Michael A. Nickerson,* and *William W. Derengoski,* Assistant Attorneys General, for Michigan Public Service Commission.

*Michael A. Cox,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Michael E. Moody,* Assistant Attorney General, for the Attorney General.

*Clark Hill PLC* (by *Don L. Keskey*) for Michigan Community Action Agency Association.

Before: DONOFRIO, P.J., and MARKEY and FORT HOOD, JJ.

PER CURIAM. Appellant Michigan Consolidated Gas Company (MichCon) appeals by right an order of appellee Michigan Public Service Commission (PSC) reducing MichCon's gas costs by $26,529,000 for purposes of calculating its 2002 gas cost recovery (GCR) factor.[1] We affirm.

---

[1] In the jurisdictional statement section of its brief, appellee Michigan Community Action Agency Association (MCAAA) indicates that this appeal should be dismissed because its motion for rehearing filed on April 11, 2003, is still pending before the PSC. However, MichCon filed its claim of appeal with this Court on the same date. Because of the lack of a

I

Our review of PSC orders is narrow. *In re MCI Telecom Complaint,* 255 Mich App 361, 365; 661 NW2d 611 (2003). All rates, fares, charges, practices, and services the PSC prescribes are prima facie lawful and reasonable. *Id.*; MCL 462.25. A party challenging an order of the PSC has the burden of showing by clear and satisfactory evidence that the order is unlawful or unreasonable. MCL 462.26(8).

II

MichCon first argues that the PSC order at issue is unlawful because it violates the general prohibition against retroactive ratemaking. We disagree.

MichCon relies on *Bd of Pub Utility Comm'rs v New York Tel Co,* 271 US 23, 31; 46 S Ct 363; 70 L Ed 808 (1926), particularly noting the holding in that case that the Fourteenth Amendment guarantees a utility "a reasonable return on the value of the property used at the time that it is being used for the public service." MichCon also refers to the further holding in that case that past profits "cannot be used to sustain confiscatory rates for the future." *Id.* at 32. MichCon suggests that, although it realized a profit during the overall period from 1999 to 2001, it was still unconstitutionally confiscatory for the PSC to impose a $26,529,000 adjustment for the 2002 GCR plan year that will force it to sell a portion of its gas in that year below its actual cost. But

specific time stamp on the motion filed with the PSC, it is unclear whether that motion was filed before or after MichCon filed its claim of appeal with this Court. Thus, we conclude that the MCAAA has not established that this Court lacks jurisdiction in this case on the basis of the existence of a pending motion before the PSC at the time the claim of appeal was filed because it is possible that the claim of appeal was filed first.

we distinguish *New York Tel* because that case involved the overall rates for telephone service, not an isolated part of determining a rate as in the present case. Specifically, in *New York Tel,* it was undisputed that the rates at issue were "not sufficient to yield a just return after paying taxes and operating expenses, including a proper allowance for current depreciation." *Id.* Because the rates in *New York Tel* did not yield an overall just return for the utility during the relevant period, those rates were held to be unconstitutionally confiscatory. In contrast, the $26,529,000 adjustment to MichCon's allowable 2002 gas costs does not by itself determine whether the total amount MichCon receives for providing gas services in 2002 affords it a just return.

Indeed, in *Duquesne Light Co v Barasch,* 488 US 299, 314; 109 S Ct 609; 102 L Ed 2d 646 (1989), the Court held that the United States Constitution "protects the utility from the net effect of the rate order on its property." In other words, an isolated part of determining a utility's rate for a given period, such as the adjustment at issue in this case, cannot violate the utility's constitutional protection against a confiscatory rate if the overall rate allowed to the utility during that period provides a fair return. Because the relevant proceeding below did not involve a consideration of MichCon's actual return or loss on regulated gas sales in 2002, i.e., a reconciliation proceeding, there is no basis to conclude, and thus MichCon has not established, that the adjustment at issue unconstitutionally deprived it of a fair return on its investment in violation of the Fourteenth Amendment. Rather, no claim of an unconstitutionally confiscatory rate is ripe for consideration before a reconciliation proceeding at which MichCon's actual return or loss on regulated gas sales would be known or determined.

Turning to the heart of this appeal, MichCon invokes the prohibition on retroactive ratemaking articulated in *Michigan Bell Tel Co v Pub Service Comm*, 315 Mich 533; 24 NW2d 200 (1946). In that case, the PSC on December 28, 1944, ordered a telephone company to reduce its gross revenues for 1944 by $3.5 million and to refund a pro rata amount to its customers. *Id.* at 535. The PSC entered this order although its predecessor regulatory body had authorized the company's rates and charges before December 28, 1944. *Id.* at 542-543. Our Supreme Court held the PSC's order was effectively a retroactive rate reduction imposed without statutory authority. *Id.* at 544-547. Still, we conclude that the *Michigan Bell* prohibition on retroactive ratemaking is simply inapposite to the present case. Here, the PSC did not order MichCon to refund amounts to its customers or adjust the amount that the PSC had already authorized Mich-Con to charge for gas. Rather, this case is part of the proceedings to set the rate that MichCon will be approved to charge for gas in 2002. Accordingly, we conclude that this case does not involve an attempt to, in effect, retroactively reduce rates or charges that had previously been finally approved, as occurred in *Michigan Bell*. We find support for this conclusion in this Court's statement in *Detroit Edison Co v Pub Service Comm*, 221 Mich App 370, 376; 562 NW2d 224 (1997), that prohibited retroactive ratemaking "involves a change either upward or downward in the rates charged by a utility for its service under a lawful order."

MichCon also argues, either as part of or in tandem with its retroactive ratemaking argument, that the $26,529,000 adjustment at issue constituted an improper refund from profits that MichCon made on the sale of gas from 1999 to 2001. MichCon contends that the PSC improperly considered its actions in 2001 to decrement its gas in storage in this 2002 GCR proceed-

ing. First, we reject MichCon's position that the PSC may not consider events in years predating the GCR plan year of the particular proceeding because it is plainly inconsistent with provisions of MCL 460.6h that establish the framework for the GCR process. In particular, MCL 460.6h(6) directs the PSC to "evaluate the reasonableness and prudence of the decisions underlying the [GCR] plan filed by the gas utility" pursuant to MCL 460.6h(3). In turn, MCL 460.6h(3) expressly requires the filing of a GCR plan not less than three months *before* the start of the period covered by the GCR plan. Thus, the PSC's review of a GCR plan necessarily involves considerations of a utility's decisions that were made before the relevant GCR plan year. Also, the amount of stored gas available at the start of a GCR plan year is based on decisions made and implemented before that time. Given that the GCR process for MichCon was only suspended for a set period from 1999 to 2001, MichCon was on notice that it could be subject to PSC regulation, including an evaluation of its underlying decisions regarding the use of stored gas in a GCR process for 2002. Because some decisions regarding gas supplies for 2002 would inevitably have been made in 2001, it follows that MichCon was also on notice that the PSC could review its decisions regarding removals of gas from storage in 2001 when the PSC reviewed MichCon's GCR plan for 2002.

Moreover, contrary to MichCon's position, the PSC's decision to order the $26,529,000 adjustment does not amount to ordering a "refund" from MichCon's profits in 2001. In this regard, MichCon asserts that the PSC's decision absolves its customers from paying for $26,529,000 worth of gas they consumed in 2001. We disagree because the order at issue does not change the fact that MichCon charged its customers $2.95 per thousand cubic feet (Mcf) for gas in 2001 or require any

direct refund from payments attributable to those charges. Rather, the adjustment the PSC ordered affects the amount that MichCon will ultimately be allowed to charge customers for gas it sells them in 2002. While this may effectively require MichCon to sell some gas in 2002 for less than it paid for it, the essential basis for this is the PSC's view that MichCon acquired that gas at an unwarranted high price because of its unreasonable decisions regarding withdrawals of stored gas in 2001. Consequently, it is not entitled to full reimbursement for the cost of that gas. From Mich-Con's perspective, it might appear that it is being required to refund some of the profit that it made in 1999 to 2001, but that is not the actual basis for or the direct effect of the adjustment ordered by the PSC. In fact, the adjustment is simply part of the PSC's calculation of the rate that MichCon should be allowed to obtain for selling gas in 2002. That is, setting a GCR factor for a given plan year does not constitute ordering a utility to "refund," even if the utility is precluded from recovering the full cost of gas it provides as part of the GCR factor during the plan year because the PSC determined that the utility unreasonably and imprudently obtained some of that gas at an unduly high price. Further, contrary to MichCon's position, the PSC did not determine that the rate of $2.95 per Mcf it previously authorized was unreasonable. Instead, the PSC considered only the reasonableness of the GCR factor that MichCon sought to establish for 2002.

MichCon also argues that this Court's holding in *Attorney General v Pub Service Comm*, 262 Mich App 649; 686 NW2d 804 (2004), indicates that the adjustment to its 2002 GCR factor at issue "unquestionably" amounted to unlawful retroactive ratemaking. We disagree. In that case, the Attorney General appealed a PSC decision to allow Detroit Edison to amortize over

1998 and 1999 extraordinary storm-related expenses incurred in 1997 and to offset half those extraordinary expenses in 1998 against a previously ordered rate reduction. *Id.* at 650-652. This Court held that the PSC's decision did not constitute retroactive ratemaking; rather, the PSC permitted the use of deferred cost accounting for storm-related expenses. *Id.* at 655. Further, the Court held there was no violation of *Michigan Bell* because the "PSC did not authorize or require Detroit Edison to readjust the rates charged in a prior year." *Id.* at 657. So, contrary to MichCon's position, *Attorney General* actually supports the conclusion that no retroactive ratemaking occurred in this case because the PSC did not alter the rate that MichCon was authorized to charge for gas while the 1999-2001 frozen rate of $2.95 per Mcf was in effect.

Nevertheless, MichCon asserts that the *Attorney General* panel found there was no retroactive ratemaking in that case because the deferral of expenses was requested before the accounting books were closed for 1997 and that deferral was expressly permitted under the accounting rules governing those extraordinary expenses. From this, MichCon suggests that the present case involves retroactive ratemaking because the adjustment to the 2002 GCR factor was made after the accounting books were closed for the 1999-2001 period without any authority in accounting rules. But *Attorney General* does not support such a conclusion. Although the *Attorney General* panel did state that Detroit Edison's request to recover its extraordinary storm-related expenses for 1997 was timely because it was made before it closed its books at the end of the 1997 calendar year, *id.* at 659, that decision is simply inapposite to the present case. This case does not involve a request by a utility to increase its rates to recover certain expenses; it involves the PSC's review of a GCR plan submitted by

a utility. Accordingly, there is simply no issue of timeliness in this case. Similarly, the *Attorney General* panel stated that once the 1997 expenses at issue were deferred to 1998 and 1999, "they became expenses incurred in the year to which they were deferred" and that the amortization process "is consistent with established and accepted regulatory and accounting principles." *Id.* at 658. Again, that holding does not apply to the present case because the PSC did not defer expenses from one period to another. It simply disallowed some of the gas costs MichCon claimed for 2002 because those costs were not reasonably and prudently incurred. MCL 460.6h(6).

MichCon also relies on *Consumers Power Co v Pub Service Comm,* 460 Mich 148, 168; 596 NW2d 126 (1999), which held that the PSC lacked statutory authority (at that time) to require an electric utility to provide "retail wheeling" or to transmit a third-party provider's electricity through its system to a customer.[2] MichCon suggests that the PSC lacked any statutory authority to materially change the gas customer's choice (GCC) program that MichCon had in place from 1999 to 2001 and that it is improperly doing so on a retroactive basis by the $26,529,000 adjustment at issue. Assuming that the holding in *Consumers Power* extends to the provision of gas service so that the PSC could not have ordered MichCon at the relevant time to implement a GCC program or to adopt an amended version of its proposed program, that is immaterial to the present case. In the order at issue, the PSC did not alter any term of the GCC program under which Mich-

---

[2] The Legislature subsequently granted such authority by enacting the Customer Choice and Electricity Reliability Act, 2000 PA 141 and 142, MCL 460.10 through 460.10bb. See *Consumers Energy Co v Pub Service Comm No 2,* 261 Mich App 455, 457; 683 NW2d 188 (2004).

Con operated from 1999 to 2001. Rather, the PSC determined MichCon's GCR factor for 2002, a matter plainly within its authority under MCL 460.6h.

We note that, throughout its briefs on appeal, Mich-Con repeatedly refers to being granted discretion by the PSC's earlier order in PSC Case No. U-11682, which authorized the program in place from 1999 to 2001 and included a fixed rate of $2.95 per Mcf for gas. MichCon suggests that this discretion encompassed MichCon's having the right to withdraw gas from storage, so that considering such storage withdrawals as a factor in support of disallowing gas costs for purposes of the 2002 GCR factor retroactively changes that order. We do not believe that anything in the PSC order in Case No. U-11682 may reasonably be read as granting MichCon such an assurance that decisions it made during 2001 could not be considered for purposes of a 2002 GCR plan year proceeding. Indeed, the PSC order in Case No. U-11682 noted that "[d]uring the three-year program, there is no mechanism in Mich Con's proposal to increase charges for system supply gas even if gas commodity prices increase" and that "[t]he relief granted will not increase the rates of any customer." This could reasonably be considered as an indication that, in entering its order in Case No. U-11682, the PSC did not contemplate or intend to authorize MichCon to shift costs related to the rate of $2.95 per Mcf in place from 1999 to 2001 to its customers in later years and thereby increase the rates that customers would subsequently pay.

We also reject MichCon's argument that MCL 460.6h(6) did not authorize the PSC to consider as a factor gas that MichCon had stored before 2002 because it is contrary to the plain language of that statutory provision. In particular, MichCon is incorrect in arguing that MCL 460.6h(6) limits the PSC to considering

certain factors with regard to a gas supply and cost review. Rather, the language of MCL 460.6h(6) authorizing the PSC to consider "other relevant factors" in evaluating the decisions underlying a GCR plan can only reasonably be understood as allowing the PSC to consider any relevant factor in its review of a GCR plan as opposed to the PSC being required to limit its consideration to the factors claimed by MichCon. To read into the language the limitation MichCon seeks would violate the principle that unambiguous statutory language must be enforced as written. *Robertson v DaimlerChrysler Corp*, 465 Mich 732, 748; 641 NW2d 567 (2002).

Finally, MichCon invokes the principle of statutory construction that statutes are presumed to operate prospectively unless a contrary intent is clearly manifested. *Franks v White Pine Copper Div*, 422 Mich 636, 671; 375 NW2d 715 (1985). MichCon argues that the PSC violated this principle in the order being appealed because there is no clearly manifested intent in MCL 460.6h to allow a suspended GCR clause to be applied retroactively to MichCon's gas storage decrement actions in 2001. But this case does not involve retroactive application of MCL 460.6h because the relevant statutory language has been in force since 1982, well before the circumstances pertinent to this case. Although MichCon's GCR clause was suspended from 1999 to 2001, that does not change the fact that MCL 460.6h was in force throughout that time. The PSC's consideration of events that occurred in 2001 when applying a statute enacted in 1982 does not involve the retroactive application of legislation.

III

MichCon also argues that the PSC acted unreasonably by making the $26,529,000 adjustment at issue. We disagree.

At its heart, the pertinent rationale of the PSC was that MichCon indicated in its application for the 1999-2001 program in Case No. U-11682 that it, rather than its customers, would bear the risk of the market price of gas rising above $2.95 per Mcf during that period and that MichCon's storage decrement in 2001 was an inappropriate attempt to avoid the consequences of that undertaking by substantially reducing its losses in 2001 through delaying purchases of gas at market prices until 2002 to pass the price of gas greater than $2.95 per Mcf on to MichCon's customers.

We conclude that the PSC's decision was reasonable and supported by the evidence. *In re Michigan Cable Telecom Ass'n Complaint*, 239 Mich App 686, 690; 609 NW2d 854 (2000). As an initial matter, the PSC's conclusion that MichCon undertook the 2001 storage decrement simply to reduce losses that year is supported by the testimony of Don Stanczak, MichCon's Director of Regulatory Policy, that MichCon undertook that storage decrement "to moderate the loss on gas sales for 2001."

Recognizing this, we believe that it was reasonable for the PSC to conclude that MichCon's decision to make unusually large withdrawals of gas from storage in 2001 was not reasonable and prudent within the meaning of MCL 460.6h(6). It is apparent that a substantial motivating factor for MichCon to propose the flat rate of $2.95 per Mcf from 1999 to 2001 was the possibility of it obtaining larger profits by selling gas that it acquired at market rates well below that amount than it would under the GCR process. It was reasonable for the PSC to effectively view MichCon as simultaneously accepting the risk of losing money during that period if market prices of gas rose above $2.95 per Mcf.

MichCon's argument is based largely on the PSC order in Case No. U-11682 lacking an express prohibi-

tion against MichCon's withdrawing an extremely large amount of gas from storage in 2001 to mitigate its losses for that year and to transfer purchases of new gas to 2002 at higher rates to be passed on to MichCon's customers. But we believe it is implicit that the PSC did not intend to grant, and its order in Case No. U-11682 cannot reasonably be construed as having granted, MichCon a free hand to so disregard the interests of its 2002 GCR customers. Both MichCon's application and the PSC order in Case No. U-11682 emphasized that MichCon was assuming the risk with regard to the market price of gas. Indeed, the language in that application may readily be viewed as indicating that MichCon would accept losses resulting from an increased market price of gas during the 1999-2001 period rather than attempting to transfer such costs to its customers.

Further, there is no language in the PSC order in Case No. U-11682 indicating that MichCon's actions from 1999 to 2001 would be free from PSC review if MichCon returned to the GCR process in 2002, which, as indicated previously, MichCon should have known was a possibility throughout that period. Also, it would have made no sense for the PSC, which after all is charged in substantial part with protecting ratepayers, to have authorized MichCon to disregard the interests of its ratepayers in 2002.

We recognize that MichCon's application in Case No. U-11682 did refer to the setting of a fixed gas rate of $2.95 per Mcf as affording it "the purchasing and operational flexibility necessary to support customer choice." Apparently, MichCon wishes to treat this reference to "operational flexibility" as an indication that it was free to remove an unlimited amount of gas from storage to reduce its losses if the market price of gas

exceeded $2.95 per Mcf during the 1999-2001 rate freeze without having to account for that decision in the GCR process in 2002. The PSC acted reasonably in rejecting this position. The vague reference to "operational flexibility" in the application does not reasonably equate to granting MichCon free license to make any decisions it wished in 2001 without regard to the effect of those decisions on the cost of gas for its customers if it returned to the GCR process in 2002. Moreover, as previously discussed, MCL 460.6h(6) expressly directs the PSC to evaluate the reasonableness and prudence of decisions underlying a GCR plan. Accordingly, the application in Case No. U-11682 should not be considered as somehow exempting MichCon from review of its 2001 storage decrement decision for purposes of its 2002 GCR plan.

We also realize that MichCon's application in Case No. U-11682 included the following:

> MichCon will permit customers who initially choose third party suppliers to return to MichCon sales service at the proposed fixed gas commodity rate of $2.95 per Mcf plus existing gas rates irrespective of prevailing market prices. To the extent that MichCon does not have sufficient gas supplies to provide for the gas requirements of these returning customers, MichCon will assume the risk of purchasing gas supplies on the open market at rates in excess of the fixed $2.95 per Mcf gas commodity rate.

Still, the PSC could reasonably have concluded that this language did not signal that MichCon intended to withdraw unusually large amounts from its normal storage merely if the market price of gas rose above $2.95 per Mcf. Rather, this language confirms that MichCon assumed the risk of buying additional gas at market prices if the amount of gas it needed increased because of customers who had opted for an alternate supplier returning to being full-service MichCon cus-

tomers if the market price of gas rose above $2.95 per Mcf. From our review of the record, MichCon presented no evidence to reasonably support a finding that its large-scale withdrawals from storage in 2001 were motivated in substantial part by unexpected demand from such returning customers (who, in fact, constituted a small minority of MichCon's total customers) rather than simply being based on an effort to reduce losses in 2001 on sales to all customers, the bulk of whom never left full service with MichCon.

We do not believe that MichCon's arguments that unpredictable events contributed to the increase in the market price of gas, including illegal or unethical conduct by some of MichCon's suppliers, should alter our analysis. Generally, the risk of a party suffering adverse effects from such events is part of operating in a competitive market economy. Of course, it is unfortunate that either MichCon or its customers would suffer because of unscrupulous conduct by third parties, but there is no reason why MichCon's customers rather than MichCon should bear the risk of such conduct by third parties in connection with the rate of $2.95 per Mcf in force from 1999 to 2001 that MichCon voluntarily sought and obtained.

Last, we find unpersuasive MichCon's analogy to the law of the case doctrine. MichCon acknowledges that the law of the case doctrine does not "technically apply" with regard to the earlier PSC order in Case No. U-11682. The law of the case doctrine is inapplicable because, when that doctrine applies, "a ruling by an appellate court on a particular issue binds the appellate court and all lower tribunals with respect to that issue." *Ashker v Ford Motor Co*, 245 Mich App 9, 13; 627 NW2d 1 (2001). The PSC is not an appellate court. Moreover, the order in Case No. U-11682 did not purport to

address any issue regarding MichCon's 2002 GCR factor. Further, the gist of MichCon's argument in this regard appears to be that the order being appealed is somehow inconsistent with the order in Case No. U-11682. That is simply incorrect. As we have discussed, the earlier order does not provide that MichCon's decisions in 2001 were exempt from review for purposes of a 2002 GCR proceeding.

We affirm.