ATTORNEY GENERAL v PUBLIC SERVICE COMMISSION

ASSOCIATION OF BUSINESSES ADVOCATING TARIFF EQUITY v
PUBLIC SERVICE COMMISSION

Docket Nos. 148323, 152333. Submitted December 8, 1993, at Lansing.
Decided March 9, 1994; approved for publication July 25, 1994,
at 9:00 A.M.

Consumers Power Company filed an application with the Public
Service Commission (PSC) requesting approval of an agreement
it had reached with the PSC's staff that would limit the level of
Consumers' gas-producing profits by the spending in 1992 of at
least $200 million on operation and maintenance activities or,
in the alternative, by the refunding to customers of revenues in
the amount of the difference between $200 million and the
amount actually spent on operation and maintenance activities
and by the refunding of a portion of its earnings to the extent
that its earnings on common equity exceeded 13.25 percent.
The Attorney General and the Association of Businesses Advo-
cating Tariff Equity (ABATE) opposed the application, claiming
that the PSC could not approve the settlement in the absence of
holding full evidentiary hearings at which interested parties
could appear. The PSC approved the settlement agreement,
holding that notice and an evidentiary hearing were not re-
quired before approval, because the settlement agreement did
not result in an increase in rates and MCL 460.6a(1); MSA
22.13(6a)(1), at the time the orders were entered, specifically
authorized approval without notice or a hearing of an altera-
tion or amendment that would result in no increase in the cost
of service to a utility's customers. The Attorney General ap-
pealed (Docket No. 148323). ABATE moved for a rehearing,
which was denied by the PSC. ABATE appealed (Docket No.
152333). The appeals were consolidated.

The Court of Appeals held:

The PSC properly concluded that notice and public hearings
were not required before its approval of the settlement agree-
ment. At the time, § 6(a) clearly permitted approval without
notice or a hearing where an amendment would result in no

increase in the cost of service to the customers. The amendments contained in the settlement resulted in no increased costs to the customers of the gas services at issue.

1. Neither the increase in operating and maintenance expenses nor the possibility of a refund resulted in an increase in rates paid by customers over and above those that would have been paid under the existing rate schedule.

2. Because the approval of the settlement agreement was not a contested case, there was no need for an evidentiary hearing. Accordingly, the PSC was not required to find facts on the record.

3. It has not been demonstrated that the PSC's orders approving the settlement agreement were unreasonable.

4. The refund mechanism did not constitute illegal retroactive ratemaking, because the settlement agreement did not change the rates adopted in the 1989 general rate case, was consensual in nature, was prospective only, and would not necessarily result in refunds.

5. The refund mechanism did not constitute an adjustment clause.

6. The Attorney General failed to support his assertion that the PSC was not authorized to negotiate with utilities where, as here, rates would not change as a result of the negotiations.

Affirmed.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Luis F. Fernandez* and *Donald E. Erickson,* Assistant Attorneys General, for the Attorney General.

*Hill Lewis* (by *Douglas H. West, Nancy L. Lukey,* and *Ronald A. King*), for the Association of Businesses Advocating Tariff Equity.

*Donald L. Keskey* and *Sharon L. Feldman,* Assistant Attorneys General, for the Public Service Commission.

*Jon R. Robinson,* for Consumers Power Company.

Before: TAYLOR, P.J., and REILLY and M. J. TAL-
BOT,* JJ.

PER CURIAM. In Docket No. 148323, appellant
Attorney General claims an appeal from an order
entered on December 19, 1991, by the Michigan
Public Service Commission (PSC) approving a settle-
ment agreement between appellee Consumers
Power Company and the PSC's staff. In Docket No.
152333, appellant Association of Businesses Advo-
cating Tariff Equity (ABATE) claims an appeal from
an order entered on April 15, 1992, by the PSC
denying rehearing of the December 19, 1991, or-
der. We affirm both orders.

In 1991, the PSC's staff expressed concern regard-
ing Consumers' earnings level for its gas-producing
business. Negotiations between the staff and Con-
sumers resulted in the settlement agreement chal-
lenged here. While the settlement agreement con-
tinued the base rates for natural gas service estab-
lished in Consumers' 1989 general rate case, Con-
sumers agreed to spend at least $200 million on
other operation and maintenance (O & M) activities
in 1992. The agreement provided that if Consum-
ers failed to spend at least this amount in 1992, it
would refund the amount by which its O & M
expenditures were less than $200 million. The
agreement also provided that if Consumers' earn-
ings on common equity exceeded 13.25 percent in
1992, Consumers would refund revenues equiva-
lent to a portion of the excess. The amount to be
refunded was to be determined according to a
specified formula. The parties stipulated that the
settlement agreement would not result in an in-
crease in rates charged by Consumers.

Consumers filed an application with the PSC
requesting approval of the settlement agreement.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

The application stated that the settlement agreement would not result in an increase in rates and, therefore, ex parte approval was sought pursuant to MCL 460.6a(1); MSA 22.13(6a)(1). At the time the orders were entered, § 6a(1) provided in pertinent part:

> [A]ny alteration or amendment in rates or rates schedules . . . which will result in no increase in the cost of service to its customers may be authorized and approved without any notice or hearing.

Both the Attorney General and ABATE opposed the application.

In an order entered on December 19, 1991, the PSC approved the settlement agreement. The PSC determined that the agreement would not increase rates for any rate class. Consequently, pursuant to § 6a(1), notice and an evidentiary hearing was not required before approval of the agreement. The PSC noted that the concerns expressed by the Attorney General and ABATE could be dealt with through separate complaint proceedings or in Consumers' next general rate case.

ABATE filed a verified petition for rehearing of the PSC's order of December 19, 1991. On April 15, 1992, the PSC issued an order denying the petition. The PSC held that the fact that ABATE did not participate in discussions leading to the settlement agreement, or the fact that a hearing was not held, did not render the process unlawful or unreasonable, and that approval of the settlement was not inconsistent with due process. The PSC rejected the argument that it was required to make necessary findings of fact regarding the level of other O & M expenses, the authorized rate of return, the proper interest rate for refunds, and the refund allocation methods. The PSC found no support for

ABATE's statement that the agreement had no independent legal significance.

The appellants raise similar issues on appeal. For convenience, and to avoid repetition, the following analysis parallels the structure of ABATE's arguments, with reference to the Attorney General's arguments when appropriate.

The standard of review for PSC orders is narrow and well established. Pursuant to MCL 462.25; MSA 22.44, all rates, fares, charges, classification and joint rates, regulations, practices, and services prescribed by the PSC are presumed, prima facie, to be lawful and reasonable. *Michigan Consolidated Gas Co v Public Service Comm,* 389 Mich 624; 209 NW2d 210 (1973). A party aggrieved by an order of the PSC bears the burden of proving by clear and satisfactory evidence that the order is unlawful or unreasonable. MCL 462.26(8); MSA 22.45(8). The term "unlawful" has been defined as an erroneous interpretation or application of the law, and the term "unreasonable" has been defined as unsupported by the evidence. *Associated Truck Lines, Inc v Public Service Comm,* 377 Mich 259; 140 NW2d 515 (1966).

Pursuant to Const 1963, art 6, § 28, a final agency order shall be reviewed to determine whether it is authorized by law and, in cases where a hearing is required, whether it is supported by competent, material, and substantial evidence on the whole record. The same standard of review applies to a final order of the PSC. See *Attorney General v Public Service Comm,* 165 Mich App 230, 235; 418 NW2d 660 (1987). A reviewing court gives due deference to the PSC's administrative expertise and is not to substitute its judgment for that of the PSC. *Yankoviak v Public Service Comm,* 349 Mich 641, 648; 85 NW2d 75 (1975); *Building Owners & Managers Ass'n of*

*Metropolitan Detroit v Public Service Comm,* 131
Mich App 504, 517; 346 NW2d 581 (1984), aff'd 424
Mich 494 (1986).

Both ABATE and the Attorney General argue
that the PSC's orders must be reversed because the
PSC approved Consumers' application, authorizing
an increase in rates, without providing notice and
an opportunity for interested parties to be heard
as required by § 6a. The appellants argue that the
settlement agreement increases the cost of service
to customers by requiring Consumers to spend at
least $200 million on O & M expenses, which was
more than was specified in Consumers' 1989 gen-
eral rate case. They also contend that the agree-
ment alters rates by requiring refunds under spe-
cific circumstances, and that refunds effectively
change the rates paid by customers.

We reject these arguments. The agreement was
reached at Consumers' request and with its ap-
proval. The agreement provides alternative meth-
ods for Consumers to reduce its profits. Consumers
had the option to spend $200 million on O & M
expenses and avoid paying a refund, or paying a
refund if that full amount is not spent. A potential
refund does not increase the rate charged to cus-
tomers. The order approving the agreement did
not increase the rates. Therefore, no hearing was
required under § 6a(1).

ABATE also argues that the PSC's orders must be
reversed because they are not supported by compe-
tent, material, and substantial evidence on the
whole record. Additionally, ABATE contends that
the PSC orders do not discuss the underlying facts
that form the basis for approval of the agreement
and, therefore, cannot be properly reviewed. *Con-
sumers Power Co v Public Service Comm,* 78 Mich
App 581, 585; 261 NW2d 10 (1977).

ABATE's argument is without merit. The require-

ment that the PSC support its findings by competent, material, and substantial evidence on the whole record applies only to orders issued in a contested case where a hearing is required. Const 1963, art 6, § 28; MCL 24.306; MSA 3.560(206); MCL 24.285; MSA 3.560(185); MCL 460.6a(1); MSA 22.13(6a)(1). As stated above, Consumers' application and the settlement agreement did not involve a rate increase. Therefore, the PSC was not required to hold an evidentiary hearing before approving the agreement.

Next, ABATE argues that the PSC's orders must be reversed because they are arbitrary and capricious. We disagree. MCL 462.26(8); MSA 22.45(8) requires a reviewing court to determine only whether an order is unlawful or unreasonable, not whether it is arbitrary and capricious. In any event, contrary to ABATE's claim, the voluntary agreement does not require Consumers to spend $200 million on O & M expenses. Because such spending is not mandated, it cannot be said to be unreasonable to have omitted detailed spending requirements. Further, the potential refunds, including interest, which benefit the customers, would not be possible absent Consumers' consent. ABATE does not demonstrate that the refund mechanism complained of is prohibited by statute or rule. The orders did not set rates to be charged by Consumers. Therefore, ABATE's characterization of the provisions of the agreement as "departures from traditional ratemaking" is inaccurate. ABATE has not demonstrated that the PSC's orders are unreasonable.

Both ABATE and the Attorney General argue that the agreement's refund mechanism is illegal because it retroactively adjusts the price paid by Consumers' customers for natural gas and constitutes retroactive ratemaking. Again, we disagree.

Retroactive ratemaking applies to a change, either upward or downward, in the rates charged by a utility for its service under a lawful order. *Michigan Bell Telephone Co v Public Service Comm,* 315 Mich 533, 547; 24 NW2d 200 (1946). Retroactive ratemaking is prohibited by law. *Building Homeowners & Managers Ass'n of Metropolitan Detroit v Public Service Comm,* 424 Mich 494; 383 NW2d 72 (1986).

The PSC's orders do not constitute the retroactive ratemaking prohibited in *Michigan Bell, supra,* because the agreement between Consumers and the PSC does not change the rates established in the 1989 general rate case. Unlike in *Michigan Bell, supra,* the agreement here is consensual, applies on a prospective basis only, and the one-time refunds are merely potential, not guaranteed.

Both ABATE and the Attorney General argue that by approving the agreement, the PSC approved an adjustment clause without providing notice and an opportunity for a hearing, contrary to MCL 460.6a(2); MSA 22.13(6a)(2). They contend that the agreement increased Consumers' O & M expenses above the level approved in the 1989 general rate case, and conditioned rates upon the new level by providing for refunds. This argument is also without merit. The refund mechanism in the settlement agreement does not constitute an adjustment clause. See *Detroit Edison Co v Michigan Public Service Comm,* 416 Mich 510; 331 NW2d 159 (1982).

Finally, the Attorney General argues that the PSC can modify the rate charged by a utility by considering either an application for modification or a complaint, but the PSC has no statutory authority to establish rates by negotiation.

Again, we point out that the possibility of a

voluntary one-time refund to customers is not the establishment of a rate. Further, the Attorney General cites no authority to support his assertion that the PSC was not authorized under § 6a(1) to engage in negotiations with Consumers. The PSC's interpretation and application of § 6a(1), allowing negotiation when rates are not changed, should be given deference. *Yankoviak, supra.*

Affirmed.