*In re* MARTINEZ COMPLAINT

Docket No. 225396. Submitted November 7, 2001, at Lansing. Decided
April 30, 2002, at 9:25 A.M. Leave to appeal sought.

Enrique Martinez filed a complaint with the Michigan Public Service
Commission (MPSC), alleging that LCI International Telecom Corpo-
ration, doing business as Qwest Communications Services,
switched his long-distance telephone service without authorization
in October or November 1998. The MPSC found that Qwest had vio-
lated subsection 505(1) of the Michigan Telecommunications Act
(MTA), MCL 484.2505(1), and ordered Qwest to pay a fine of $40,000
for a second-offense violation of the MTA, as provided in MCL
484.2506(2)(a), pay restitution to Mr. Martinez for his time and
expenses, pay the costs and reasonable attorney fees incurred by
the MPSC staff and Mr. Martinez because of the filing of frivolous
defenses, and cease and desist from further violations. Qwest
appealed.

The Court of Appeals *held*:

1. The MPSC erred in imposing a fine for a second-offense viola-
tion. The fine must be reduced to $20,000, the maximum allowable
fine for a first offense. Although one month before the MPSC entered
its order in this matter it entered an order in another case involving
Qwest in which Qwest was found to have unlawfully switched the
long-distance service of other complainants in March 1999 and was
fined the maximum allowable fine for a first offense, the offense in
this matter occurred before March 1999 and cannot be considered
a second or subsequent offense, regardless of the sequence in
which the MPSC addressed the offenses.

2. The MPSC erred in finding Qwest's defenses to be frivolous. The
award of costs, including reasonable attorney fees, to Mr. Martinez
and the MPSC staff must be reversed. At the time the defenses were
asserted, no binding precedent precluded them.

Affirmed in part, reversed in part, and fine imposed for violation
of MCL 484.2506(2)(a) reduced to $20,000.

*Fraser Trebilcock Davis & Foster, P.C.* (by *Gra-
ham K. Crabtree*), for LCI International Telecom
Corporation.

*Jennifer M. Granholm,* Attorney General, *Thomas L. Casey,* Solicitor General, and *David A. Voges* and *Michael A. Nickerson,* Assistant Attorneys General, for the Michigan Public Service Commission.

Before: FITZGERALD, P.J., and HOEKSTRA and MARKEY, JJ.

PER CURIAM. On September 10, 1999, Enrique Martinez filed a complaint with the Michigan Public Service Commission (MPSC), alleging that LCI International Telecom Corporation, doing business as Qwest Communications Services (Qwest), had switched his long-distance (toll) telephone service without his authorization, a practice commonly referred to as "slamming." In an opinion and order issued January 19, 2000, the MPSC found that Qwest had violated § 505 of the Michigan Telecommunications Act (MTA), MCL 484.2505,[1] by switching Mr. Martinez' service without authorization. The MPSC ordered Qwest to pay a fine of $40,000 for a second-offense violation of the MTA and the MPSC's antislamming procedures, pay restitution of $1,022.36 to Mr. Martinez for his time and expenses, pay the costs and reasonable attorney fees incurred by the MPSC staff and Mr. Martinez, and cease and desist from future violations of the MTA and the antislamming procedures. Qwest appeals by right. We affirm in part and reverse in part the MPSC's order and reduce the fine imposed for violating § 505.

A party challenging an MPSC order bears the burden of proving by clear and satisfactory evidence that the order is unlawful or unreasonable. MCL 462.26(8); *In*

---

[1] The MTA is repealed effective December 31, 2005. MCL 484.2604, amended by 2000 PA 295, immediate effect, July 17, 2000. Before this amendment, the act had been set to be repealed on January 1, 2001.

*re MCI Telecommunications Complaint*, 460 Mich 396, 426-427; 596 NW2d 164 (1999). To prove that an order is unlawful, the appellant must show " 'that the commission failed to follow some mandatory provision of the statute or was guilty of an abuse of discretion in the exercise of its judgment.' " *Id.* at 427, quoting *Giaras v Public Service Comm*, 301 Mich 262, 269; 3 NW2d 268 (1942). Further, "[t]he hurdle of unreasonableness is equally high. Within the confines of its jurisdiction, there is a broad range or 'zone' of reasonableness within which the [MPSC] may operate." *In re MCI, supra* at 427. Where the MPSC engages in fact finding, the findings must be supported by competent, material, and substantial evidence on the whole record. *Attorney General v Public Service Comm*, 206 Mich App 290, 294-296; 520 NW2d 636 (1994).

Qwest first argues that the MPSC's imposition of a $40,000 second-offense fine was unlawful and excessive. We agree. Slamming is prohibited under subsection 505(1) of the MTA, MCL 484.2505(1), which provides: "An end user of a telecommunications provider shall not be switched to another provider without the authorization of the end user." Remedies and penalties for violation of § 505 are set forth in § 506, which at the relevant time provided in pertinent part:

> (2) If the commission finds that a person has violated section 505 or an order issued under section 505, the commission shall order remedies and penalties to protect and make whole end users and other persons who have suffered damages as a result of the violation, including, but not limited to, 1 or more of the following:
>
> (a) Order the person to pay a fine for the first offense of not less than $10,000.00 or more than $20,000.00. For a second and any subsequent offense, the commission shall

> order the person to pay a fine of not less that $25,000.00 or more than $40,000.00. If the commission finds that the second or any of the subsequent offenses were knowingly made in violation of section 505, the commission shall order the person to pay a fine of not more than $50,000.00. Each switch made in violation of section 505 shall be a separate offense under this subdivision. [MCL 484.2506(2)(a).]

On December 16, 1999, in another case involving Qwest, the MPSC found that Qwest violated the anti-slamming provisions of the MTA in a contested case proceeding arising from a complaint filed by Dagoberto and Mary Canales and ordered Qwest to pay a fine of $21,000, reimburse the Canaleses for their expenses, cease and desist future violations, and pay the costs of the Canaleses and the MPSC staff, including reasonable attorney fees, on the basis that Qwest's defenses were devoid of legal merit and therefore frivolous (MPSC Case No. U-12031). On appeal, this Court affirmed the MPSC's findings of statutory violations and the fines and reimbursements imposed for those violations, but reversed the imposition of costs and attorney fees, finding that Qwest's arguments were not frivolous. *In re Canales Complaint*, 247 Mich App 487; 637 NW2d 236 (2001).

Approximately one month after the MPSC entered its order in the *In re Canales* matter, it issued the order in the present matter. The MPSC found the present offense to be Qwest's second offense, subjecting it to an enhanced penalty under subsection 506(2)(a). Qwest now asserts, and we agree, that the imposition of an enhanced fine for a second offense was improper where the alleged prior offense of slamming

in *In re Canales, supra,* occurred *after* the offense in the present case.[2]

This conclusion is supported by this Court's decision in *In re Canales, supra.* In that case, which was the first one involving Qwest, this Court affirmed the MPSC's decision to fine Qwest the maximum allowable of $20,000 because it " 'is appropriate to increase the incentive to eliminate slamming' and that lesser fines would be 'insufficient incentives if providers conclude that they can simply reimburse the out-of-pocket costs for those who complain and keep the toll revenues from those who do not complain.' " *Id.* at 494. This rationale clearly is one comprised of common sense and comports with a normal reading of the statutory language. A second offense means just that: one that occurs subsequent in time, or chronological order. Here, the offense at hand occurred *before* that in the case of *In re Canales.*

Subsection 506(2)(a) reflects the same analysis by providing for an increased penalty for "a second and any subsequent offense . . . ." Neither common sense nor a fair reading of the statute would allow for our considering this offense, though adjudicated *after* that in *In re Canales,* to be a "second" or "subsequent offense." Hence, the rationale underlying both the statute and the decision in the first case involving Qwest supports our conclusion. If the purpose for increasing the fine was to deter further violations of the statute, that cannot occur if a "subsequent" offense is in reality one that occurred before another. The fact that the MPSC addressed the second offense

---

[2] The present slamming offense occurred in October or November 1998, while the slamming offense in *In re Canales, supra,* occurred in March 1999.

before the first one is not sufficient argument to stand the plain wording of this statutory provision on its head by saying that a subsequent offense is really not because it was adjudicated earlier in time. For these reasons, we conclude that the MPSC's imposition of a $40,000 second-offense fine was both a failure to follow a mandatory provision of the statute, specifically subsection 506(2)(a), and an abuse of discretion. Accordingly, we order that the MPSC's imposition of the maximum allowable $40,000 fine for a second offense be reduced to $20,000, which is the maximum allowable fine for a first offense.

Next, Qwest argues that the MPSC clearly erred in finding Qwest's defenses to be frivolous under § 209 of the MTA, MCL 484.2209, warranting an award of costs, including reasonable attorney fees, to Mr. Martinez and the MPSC staff under subsection 506(4)[3] of the MTA. We agree and reverse.

In *In re Canales, supra* at 505-506, this Court reversed the MPSC's finding that Qwest's defenses were frivolous, explaining as follows:

> Although Qwest failed to prevail on these issues [i.e., lack of standing of Mrs. Canales and exemption from fines under subsection 506(3)], its positions were not devoid of arguable legal merit. The standing issue presents a question of statutory interpretation of a relatively new enactment not yet interpreted by the courts. While the [MPSC] determined that Qwest's position requires that the first clause of the statute be ignored, the argument that if the Legislature

---

[3] MCL 484.2506(4) provides:

> If the commission finds that a party's complaint or defense filed under this section is frivolous, the commission shall award to the prevailing party costs, including reasonable attorney fees, against the nonprevailing party and their attorney.

intended that same clause to be read so broadly as to include anyone, it was unnecessary to further enumerate specific entities who may file a complaint is a plausible legal argument and is not frivolous. Qwest was not obliged to accept the [MPSC's] decision in the earlier case as a binding statement of the law and was within its rights to seek a judicial determination of the standing issue.

Similarly, the examples of "unintentional and bona fide" errors set forth in subsection 506(3) are clearly intended to be nonexclusive. Because it was not shown that Qwest knew that the [letter of authorization] was forged and because Qwest had instructed against the practice, the argument that subsection 506(3) applied was not devoid of arguable legal merit and was not frivolous.

Consistent with *In re Canales, supra,* we conclude that the MPSC's finding that Qwest's defenses in the present case were frivolous is clearly erroneous. At the time these defenses were asserted below, no binding precedent precluded them. Accordingly, the award of costs, including attorney fees, as a sanction under subsection 506(4) is reversed.

We affirm in part and reverse in part the MPSC's order in accordance with this opinion. The fine imposed under subsection 506(2)(a) of the MTA is reduced to $20,000. We retain no further jurisdiction.