*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* APPLICATION OF CONSUMERS ENERGY
FOR ONE-TIME REVENUE REFUND,

UNPUBLISHED
May 26, 2022

RESIDENTIAL CUSTOMER GROUP

        Appellant,

v

No. 357466
Public Service Commission
LC No. 00-020932

MICHIGAN PUBLIC SERVICE COMMISSION
and CONSUMERS ENERGY COMPANY,

        Appellees.

Before: MURRAY, P.J., and SAWYER and M. J. KELLY, JJ.

PER CURIAM.

This appeal seeks to challenge an order of the Michigan Public Service Commission (PSC) that approved the distribution by Consumers Energy Company of a $28 million, one-time recovery of excess revenue from the 2020 fiscal year. The distribution went to several funds that benefit Consumers' customers and their communities. Because we conclude that appellant Residential Customer Group (RCG) is not an aggrieved party under MCR 7.203(A)(2), we dismiss the appeal.

This Court "has jurisdiction of an appeal of right filed by an aggrieved party from . . . [a] judgment or order of a . . . tribunal from which appeal of right to the Court of Appeals has been established by law or court rule." MCR 7.203(A)(2). " 'An appeal can only be taken by parties who are affected by the judgment appealed from . . . A party is aggrieved by a judgment or order when it operates on his rights and property or bears directly on his interest.' " *In re Farris/White*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 357743) (quoting *Grace Petroleum Corp v Pub Serv Comm*, 178 Mich App 309, 312; 443 NW2d 790 (1989)); slip op at 3-4.

The RCG asserts that the PSC "has traditionally recognized" the standing of "an entity or association representing . . . customers . . . to intervene in utility rate proceedings" as " 'interested persons' or 'a party' . . . affected by the utility's application for a rate increase, or a related

contested case which affect utility costs, rates, services, and regulations and accounting matters." But no one disputes that the RCG represents residential customers of Michigan utilities, including those of Consumers Energy, and in that capacity the RCG has participated in many PSC cases, as both an intervenor before the PSC and as an appellate litigant. What is at issue here, however, is whether Consumers Energy's customers are aggrieved by the PSC's decision[1] such that the RCG may properly claim an appeal on their behalf to this Court.

For purposes of standing to invoke this Court's appellate jurisdiction, " '[a]n aggrieved party is not one who is merely disappointed over a certain result' " but must have " 'suffered a concrete and particularized injury, as would a party plaintiff initially invoking the court's power.' " *Tuscola Area Airport Zoning Bd of Appeals v Mich Aeronautics Comm*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 357209) (quotation marks and citations omitted); slip op at 4, quoting *Federated Ins Co v Oakland Co Rd Comm*, 475 Mich 286, 291-292; 715 NW2d 846 (2006). In particular, such aggrievement must take the form of " 'some interest of a pecuniary nature in the outcome of the case, and not a mere possibility arising from some unknown and future contingency.' " *Tuscola Area Airport Zoning Bd of Appeals*, ___ Mich App at ___; slip op at 4, quoting *Federated Ins Co*, 475 Mich at 291. In other words, caselaw confirms that appellate standing results not from a party's mere interest in the outcome of the proceedings underlying the appeal, but rather requires that the appellant actually be "aggrieved." See *Grace Petroleum Corp*, 178 Mich App at 313 ("While the producers undoubtedly have an interest in the subject matter of the commission's decision, the producers are not aggrieved by the commission's decision in this case.").

The RCG does not dispute that its member-ratepayers are not legally entitled to refunds when approved rates end up providing a utility with greater revenues than expected, *Detroit Edison Co v Pub Serv Comm*, 82 Mich App 59, 68; 266 NW2d 665 (1978) ("If the rate structure is wrong so the utility gains $1,000,000 more profit than is reasonable and just, the commission cannot order a refund."), aff'd 416 Mich 510 (1982), but insists that its members are nonetheless aggrieved to the extent that the PSC has allowed Consumers Energy to invest these excess revenues in its foundation and six internal programs instead of providing ratepayers more direct benefits by way of monetary refunds, expenditures on structural improvements, lower future rates, etc.

For two reasons, however, we conclude that RCG's ratepayers are not aggrieved by the decision appealed. First, the represented ratepayers are not legally entitled to a refund, a principle, as noted, with which RCG agrees. As *Detroit Edison* declared, when a regulated utility gains

---

[1] The RCG makes known its disagreement with this Court's determination in Docket No. 356076 that it could not properly invoke this Court's jurisdiction for purposes of appealing a December 17, 2020 order because it was not an aggrieved party. That order approved Consumer's proposed initial 2020 refund amount, the method to determine the final refund amount, and appropriate accounting entries. To the extent RCG urges us to depart from that earlier determination, that prior order stands as the law of the case for that appeal. *Webb v Smith* (*After Second Remand*), 224 Mich App 203, 209; 568 NW2d 378 (1997). Leave to appeal that order was denied by the Supreme Court, *In re Application for One-Time Revenue Refund*, __ Mich __; 962 NW2d 35 (2022), though a motion for reconsideration remains pending.

excessive profits, the PSC "cannot order a refund." *Detroit Edison*, 82 Mich App at 68. See also *In re Application of Consumers Energy Co*, 291 Mich App 106, 113; 804 NW2d 574 (2010). Although a utility may choose to offer a refund, that the PSC may not order one on its own initiative indicates that ratepayers are not entitled to demand it, or aggrieved when the PSC does not take an act it could not take in the first place. Accordingly, ratepayers are not aggrieved when a utility decides to expend excess revenues in ways other than offering immediate and direct rate relief to its customers. Second, any objections concerning the effect of that decision on *future* rates are speculative and are instead matters for consideration and decision in contested rate cases apart from the proceedings underlying this appeal. *In re Application of Consumers Energy to Increase Elec Rates*, 316 Mich App at 238 n 3. See also *Detroit Edison*, 82 Mich App at 68 ("If the rate structure is wrong so the utility gains $1,000,000 more profit than is reasonable and just, the Commission cannot order a refund. It can certainly lower the rate so there will be no excess profit in the succeeding years.").

The RCG suggests that authorities describing standing requirements for commencing original judicial actions do not apply to addressing claims of appeal, implying that some lesser showing of interest in the matter litigated is required. But as the PSC points out, "[t]o be aggrieved, one must have some interest of a pecuniary nature in the outcome of the case, and not a mere possibility arising from some unknown and future contingency[,]" *Federated Ins Co*, 475 Mich at 291 (quotation marks and citation omitted), and "to have standing on appeal, a litigant must have suffered a concrete and particularized injury, as would a party plaintiff initially invoking the court's power[,]" *id.* at 291-292.[2] Thus, the standards we apply are well-grounded in the court rule and case law.

Nor does MCL 462.26(1) save RCG. But for certain specific and inapplicable exceptions, that statute provides that a "party in interest, being dissatisfied with any order of the commission fixing any rate or rates, fares, charges, classifications, joint rate or rates, or any order fixing any regulations, practices, or services, may . . . file an appeal as of right in the court of appeals." Based upon the distinction between MCL 462.26(1) and (7), this Court has held that "to constitute an order 'fixing' a rate, regulation, practice or service, a commission order must be addressing rates, regulations, practices, or services of a provider, or affecting a provider in general, as opposed to

---

[2] Although after *Federated Ins Co* the Supreme Court adopted a " 'limited, prudential approach' to standing," *Lansing Sch Ed Ass'n v Lansing Bd of Ed*, 487 Mich 349, 353; 792 NW2d 686 (2010), this Court subsequently cited *Federated Ins Co* while reiterating that appellate standing requires an appellant aggrieved by way of a pecuniary interest in the outcome below. *In re Application of Consumers Energy to Increase Electric Rates* (*On Remand*), 316 Mich App 231, 238 n 3; 891 NW2d 871 (2016). Further, we recently declared that the distinction between standing and aggrieved-party status "is of no consequence because[,] . . . although the former governs the right to bring suit and the latter to the right to appellate review of an administrative decision[,] . . . in either case, a particularized and concrete injury must be shown." *Tuscola Area Airport Zoning Bd of Appeals*, ___ Mich App at ___ n 7 (Docket No. 357209); slip op at 8 n 7.

orders applying existing rules to the specific facts determined through a contested-case hearing." *In re Complaint of Knox*, 255 Mich App 454, 462; 660 NW2d 777 (2003).

At issue is the one-time accounting of the $28 million. Although a utility's accounting methodology may under certain circumstances give rise to appellate litigation, when the disputes have been over adopting and retaining such methodology for future use, as opposed to decisions or adjustments concerning isolated, one-time matters. See, e.g., *In re Application of Consumers Energy*, 291 Mich App at 114 (reaffirming the PSC's use of "the accounting convention whereby storm-related expenses dating from one year were characterized as expenses incurred in the subsequent years to which they were deferred"), citing *Attorney General v Pub Serv Comm*, 262 Mich App 649, 658; 686 NW2d 804 (2004), and *Detroit Edison v Pub Serv Comm*, 221 Mich App 370, 375; 562 NW2d 224 (1997) ("What reasonable accounting method to employ is a legislative decision to be made by the PSC."). We have previously held that retroactive ratemaking does not occur when "one-time refunds are merely potential, not guaranteed," in connection with a consensual agreement between a utility and the PSC that does not change existing rates and "applies on a prospective basis only." *Attorney General v Pub Serv Comm*, 206 Mich App 290, 297; 520 NW2d 636 (1994). That such a one-time refund is not considered ratemaking further supports our conclusion that RCG is not an aggrieved party from this order.

The commission order was not fixing any rate or rates, fares, charges, classifications, joint rate or rates, or any order fixing any regulations, practices, or services of Consumers Energy.

The appeal is dismissed.

/s/ Christopher M. Murray
/s/ David H. Sawyer
/s/ Michael J. Kelly

-4-